IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

EUGENE YAZZIE and
PHYLLIS YAZZIE,
on behalf of themselves
and all others similarly situated,

        Plaintiffs,

v.                                                                 No. 1:14-cv-00555-JAP-SCY

GURLEY MOTOR CO. and
RED ROCK INVESTMENT CO.,

        Defendants.

**BRIEF IN SUPPORT OF
PLAINTIFFS' OPPOSED MOTION FOR CLASS CERTIFICATION**

**I.    Nature and Status of the Case**

        Plaintiffs Eugene and Phyllis Yazzie filed this class action against Defendants Gurley Motor Co. ("Gurley") and Red Rock Investment Co. ("Red Rock") for violations of the federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.* and the New Mexico Uniform Commercial Code ("UCC"), N.M.S.A. 1978 § 55-1-101 *et seq*.

        Gurley used a standard form car loan agreement in which it routinely misrepresented the terms of financing. It failed to include all the charges – namely, a deferred down payment – in the Total of Payments, as required by the TILA. This practice made its loans appear less expensive than they actually were.

        Red Rock, which is Gurley's in-house financing company, is the assignee of Gurley's loans. Red Rock is directly liable for Gurley's TILA violations, because the violations were apparent on the face of the loan contracts. Red Rock also bears derivative liability for the TILA violations as the holder of the loan agreements.

When a car loan went into default, Red Rock repossessed the vehicle and resold it.  The UCC requires the secured party to provide to the borrower a Notification Before Disposition of Collateral.  Red Rock's form Notifications were uniformly misleading and inadequate, violating the UCC.  The Notifications deprived borrowers of crucial information about their rights and prevented them from policing Red Rock's disposition of their property.

Mr. and Mrs. Yazzie request that the Court (a) certify two classes representing persons affected by these two types of unlawful conduct, and (b) appoint Plaintiffs' attorneys as the attorneys for the classes.

In making a determination on class certification, a court "should avoid focusing on the merits underlying the class claim."  *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988).  The Court's task at the Rule 23 stage is "not to adjudicate the case; rather, it is to select the method best suited to adjudication of the controversy fairly and efficiently."  *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013) (internal brackets and quotation marks omitted).  Inquiry into the merits at class certification is only necessary in order to determine whether resolution of each legal or factual question "can be achieved through generalized proof."  *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013) (citing *Amgen*, 133 S. Ct. at 1196).  Plaintiffs provide exhibits in connection with this Motion for Class Certification, not to prove the merits of the case, but to establish the common questions of law or fact that link the members of the class.

## II. Nature of the Class Claims

### A. Definition of the Classes

Mr. and Mrs. Yazzie seek certification of two classes, as follows.

The "Loan Agreement Class" consists of all natural persons who, beginning one year prior to the filing of the Complaint, entered into a Motor Vehicle Installment Loan Contract with Gurley where the loan agreement included a "deferred down payment," which was listed in the disclosed Payment Schedule but not included in the Total of Payments.

The "Notification Class" consists of all natural persons to whom, beginning six years prior to the filing of the Complaint, Red Rock sent its legally insufficient Notification Before Disposition of Collateral, after repossessing the person's vehicle.

### B. Gurley's Standard Form Car Loan Agreements Violate the TILA

Gurley uses standard form loan agreements. *See* Exhibit 1 ("Motor Vehicle Installment Contract and Security Agreement" between the parties). It called for a "deferred down payment." (*Id.*, highlighted). A deferred down payment is a lump-sum payment to reduce the amount of the cash price which is being financed. Unlike a standard down payment, a deferred down payment is made *after* the parties consummate the sale and financing agreements. In Mr. and Mrs. Yazzie's loan agreement, and at least 239 others beginning one year prior to the filing of this action, Gurley included the deferred down payment in the Payment Schedule but failed to include it in the Total of Payments. *Id.*[1]; Exhibit 2 (response to Plaintiff's Interrogatory No. 2(a) to

---

[1] The Payment Schedule shows 36 payments of $662.69 plus 2 payments of $500.00. These latter two payments, totaling $1,000.00, represent the deferred down payment. The sum of all payments contained in the Payment Schedule is $24,856.84. However, Gurley states the Total of Payments as $23,856.84. The Total of Payments omits the deferred down payment of $1,000.00.

3

Gurley, identifying 239 other customers "whose loan documents included deferred portions of the Down Payment in the disclosed Payment Schedule in the Segregated Disclosures, but did not include the deferred portions of the Down Payment in the disclosed Total of Payments in the Segregated Disclosures.").[2]

The TILA requires the clear, conspicuous, meaningful, and accurate disclosure of a standard set of financial terms for loans. 15 U.S.C. §§ 1632 and 1638. Among those terms are the Payment Schedule and the Total of Payments. 15 U.S.C. §§ 1632(a) and 1638(a)(5) and (6); Regulation Z, 12 C.F.R. §§ 1026.18(g) and (h). When a creditor includes a deferred down payment in the Payment Schedule, it must also include that payment in the Total of Payments. "The total of payments is the sum of the payments disclosed under [12 C.F.R.] § 1026.18(g) [concerning the Payment Schedule]. For example, if the creditor disclosed a deferred portion of the downpayment as part of the payment schedule, that payment must be reflected in the total disclosed under this paragraph." Official Interpretations of Regulation Z, Bureau of Consumer Financial Protection, § 1026.18(h)-2.[3]

Because Gurley failed to include the deferred down payment in the Total of Payments, its loan to Mr. and Mrs. Yazzie appeared to be $1,000 less expensive than it actually was. This violation of the TILA, like the violations found in at least 239 other customers' contracts, is apparent on the face of the contracts.

---

[2] Rather than including the entire list of other customers and their individual loan data, Plaintiff has noted that Exhibit 2 is "available upon request." Plaintiff does not believe that this information is disputed, but will supply it if necessary, depending on the Court's needs and Defendant's response.

[3] http://www.consumerfinance.gov/eregulations/1026-Subpart-C-Interp/2015-01321#1026-17-Interp-1.

**C.  Red Rock's Form Notification Before Disposition of Collateral Violates the UCC**

Whenever Red Rock repossessed the vehicle for a defaulted car loan, it sent the borrower a form Notification Before Disposition of Collateral.  *See, e.g.*, Exhibit 4 (Notification mailed to Mr. and Mrs. Yazzie on April 12, 2014).  Starting six years prior to the filing of this action, Red Rock repossessed and sold more than 1,000 of its customers' vehicles, using these same Notifications.  *See* Exhibit 5 (response to Plaintiff's Interrogatory No. 5 to Red Rock, identifying more than 1,000 other customers to whom Red Rock "sent a Notification of Disposition of Collateral to a debtor ").[4]

The enforcement of security interests under the UCC takes place outside of the supervision of the Court.  For this reason, it is vitally important that creditors meet their legal responsibility to provide adequate notification:

> The purpose of statutory notice is to apprise a debtor of the details of a sale so that the debtor may take whatever action he deems necessary to protect his interest.  Proper notice provides the debtor the opportunity to: (1) discharge the debt and reclaim the collateral, (2) find another purchaser, or (3) verify that the sale is conducted in a commercially reasonable manner.

*States Res. Corp. v. Gregory*, 339 S.W.3d 591, 596 (Mo. Ct. App. 2011) (internal quotation marks and citations omitted).

Each Notification sent by Red Rock violated the UCC, which strictly requires that the lender provide particular terminology before selling collateral.  N.M.S.A. 1978 § 55-6-613 and -614.  Each Notification:

---

[4] Rather than including the entire list of other customers and their individual loan data, Plaintiff has noted that Exhibit 5 is "available upon request."  Plaintiff does not believe that this information is disputed, but will supply it if necessary, depending on the Court's needs and Defendant's response.

1. Fails to state whether the disposition of the vehicle would be through public or private sale (see *First National Bank of Belen v. Jiron*, 106 NM 261, 263, 741 P.2d 1382 (1987));

2. Fails to state that the debtor was entitled to an accounting of the unpaid indebtedness;

3. Fails to describe the customer's liability for a deficiency;

4. Fails to state a telephone number the customer can call to learn the amount needed to redeem the collateral;

5. Fails to provide a telephone number or mailing address from which additional information concerning the disposition and the obligation secured was available;

6. Misstates the consumer's right to redeem until the actual time of sale.

*Id*. These violations are evident on the face of Red Rock's form Notifications.

### III.   The Court Should Certify this Case as a Class Action

#### A.   Standard for Class Certification

Class actions are essential to enforce laws protecting consumers. The Supreme Court has noted that "small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617, 117 S.Ct.2231 (1197). Similarly, as the court stated in *Eshaghi v. Hanley Dawson Cadillac Co.*, 214 Ill.App.3d 995, 574 N.E.2d 760, 764, 766 (1st Dist. 1991):

> In a large and impersonal society, class actions are often the last barricade of consumer protection. . . . To consumerists, the consumer class action is an inviting procedural device to cope with frauds causing small damages to large groups. The slight loss to the individual, when aggregated in the coffers of the wrongdoer, results in gains which are both handsome and tempting. The alternatives to the class action  -- private suits or governmental actions  --  have been so often found wanting in controlling consumer frauds that not even the ardent critics of class actions seriously contend that they are truly effective. The consumer class action, when brought by those who have no other avenue of legal redress, provides restitution to the injured, and deterrence of the wrongdoer.

"Rule 23 must be liberally interpreted" and read to "favor maintenance of class actions." *Woe v. Cuomo*, 729 F.2d 96, 107 (2d Cir. 1989); *King v. Kansas City Southern Industries*, 519 F.2d 20, 25-26 (7th Cir. 1975).

The Truth in Lending Act explicitly provides for class actions, and scores of such classes have been certified. 15 U.S.C. § 1640(a). *See, e.g.*, *Chester v. Tancorde Finance, Inc.*, 14-CV-0092 JAP/KK (D.N.M., Jan. 2015); *Abel v. Keybank*, 2004 WL 540699 (N.D.Ohio Mar. 4 2004); *Purdie v. Ace Cash Express, Inc.*, 2003 WL 22976611 (N.D.Tex. Dec. 11, 2003). *See also*, *Ballard v. Equifax Check Services, Inc.*, 186 F.R.D. 589, 600 (E.D. Cal. 1999) (class actions are desirable and to be encouraged to enforce compliance with consumer protection laws).

The UCC is also well-suited for class actions. *See, e.g.*, *Hopkins v. Kansas Teachers Cmty. Credit Union*, 265 F.R.D. 483 (W.D. Mo. 2010) (certifying a class action alleging improper Notification Before Disposition of Collateral). The New Mexico Supreme Court held in the context of a putative UCC class action that:

> The opportunity to seek class relief is of particular importance to the enforcement of consumer rights because it provides a mechanism for the spreading of costs. The class action device allows claimants with individually small claims the opportunity for relief that would otherwise be economically infeasible because they may collectively share the otherwise prohibitive costs of bringing and maintaining the claim . . . . The opportunity for class relief and its importance to

consumer rights is enshrined in the fundamental policy of New Mexico and evidenced by our statutory scheme.

*Fiser v. Dell Computer Corp.*, 2008-NMSC-046, ¶¶ 12-13, 144 N.M. 464, 468, 188 P.3d 1215, 1219.

To certify a class, the plaintiff must meet all four requirements of Fed. R. Civ. P. 23(a) and one of the three categories of Fed. R. Civ. P. 23(b). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997).

### B. Plaintiffs Satisfy the Four Requirements of Rule 23(a)

#### 1. The Proposed Classes Pass the Numerosity Test

Fed. R. Civ. P. 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." *Rex v. Owens*, 585 F. 2d 432, 436 (10th Cir. 1978). In this case, the evidence shows that the Loan Agreement class consists of at least 240 members (including the Plaintiffs), and the Notification Class consists of more than 1,000 members. *See* Section II(B), *supra*.

#### 2. The Proposed Classes Pass the Commonality Test

Fed. R. Civ. P. 23(a)(2) requires class members' and the named representatives' claims to share a common question of law *or* fact. "For a common question of law to exist, the putative class must share a discrete legal question of some kind." *J.B. ex rel Hart v. Valdez*, 186 F.3d 1280, 1289 (10th Cir. 1999). "Common nuclei of fact are typically manifest where . . . the defendants have engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters or documents." *Keele v. Wexler*, 149 F. 3d 589, 594 (7th Cir. 1998) (citations omitted).

Rule 23(a)(2) does not require all questions of law or fact to be common; even a single common question will suffice. *Wal–Mart Stores, Inc. v. Dukes*, ––– U.S. –––, 131 S.Ct. 2541, 2556 (2011). And while Rule 23 requires a showing of common questions, it does *not* require a showing "that those questions will be answered, on the merits, in favor of the class." *Amgen,* 133 S. Ct. at 1191. *Answering* common questions is reserved for the merits stage. *Id*.

Where a question of law involves "standardized conduct of the defendants toward members of the proposed class, a common nucleus of operative facts is typically presented, and the commonality requirement . . . is usually met." *Franklin v. City of Chicago*, 102 F.R.D. 944, 949 (N.D.Ill. 1984); *Patrykus v. Gomilla*, 121 F.R.D. 357, 361 (N.D.Ill. 1988). Numerous TILA class actions alleging errors in standard form disclosures have been found to meet the commonality test. *See, e.g., Maez v. Springs Auto. Group, L.L.C.*, 268 F.R.D. 391 (D. Colo. 2010); *Lymburner v. U.S. Fin. Funds, Inc.*, 263 F.R.D. 534 (N.D. Cal. 2010); *McAnaney v. Astoria Fin. Corp.*, 2006 WL 2689621 at *3 (E.D.N.Y. Sept. 19, 2006).

In this case, the following common questions are presented:

1. Whether the failure to disclose the "deferred down payment" in the Total of Payments violated the TILA; and

2. Whether the Notification Before Disposition of Collateral violated the UCC.

All of these questions have the capacity to "generate common *answers* apt to drive the resoluton of the litigation." *In re Urethane Antitrust Litigation,* __ F.3d __, 2014 WL 4801253 at *5 (10th Cir. Sept. 29, 2014) (citing *Dukes v. Walmart, supra*).

### 3. The Class Representatives Meet the Typicality Test

Fed. R. Civ. P. 23 requires that the claims of the named representative be typical of the claims of the class. "Typicality exists even when there may be varying fact situations among individual members of the class and this is all right so long as the claims of the plaintiffs and the other class members are based on the same legal or remedial theory." *Penn v. San Juan Hospital*, 528 F.2d 1181, 1189 (10th Cir. 1975); *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983).

In the present case, the claims of Mr. and Mrs. Yazzie and members of the class all arise from identical loan agreements, identical events, and from the same course of conduct by Defendants. Mr. and Mrs. Yazzie's claims are identical to those of the class members. Gurley's loan to Mr. and Mrs. Yazzie contained the same inadequate disclosure of deferred down payment to at least 239 other consumers. After it repossessed Mr. and Mrs. Yazzie's truck, Red Rock sent them the same unlawful Notification Before Disposition of Collateral that it sent to more than 1,000 other borrowers. The legal theories raised by Mr. and Mrs. Yazzie are the same as those raised on behalf of the class. There are no claims or defenses unique to Mr. and Mrs. Yazzie.

### 4. Mr. and Mrs. Yazzie and their Counsel Will Provide the Classes Adequate Representation

Fed. R. Civ. P. 23(a)(4) requires that the named representative provide fair and adequate protection for the interests of the class. *J.B. ex rel Hart*, 186 F.3d at 1287. This requirement involves two factors: "(1) the class representative must not have interests antagonistic to those of the class, and (2) the attorney representing the class must be qualified, experienced, and generally able to conduct the proposed litigation." *Lopez v. City of Santa Fe*, 206 F.R.D. 285, 289-290

(D.N.M. 2002), *citing*, *Retired Chicago Police Association v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993).

Mr. and Mrs. Yazzie understand and have fulfilled their responsibilities as class representatives. They have conferred with their attorneys on multiple occasions. They receive status reports. They have reviewed pleadings from the case. *See* Exhibit 7 (Declaration of Nicholas Mattison).

Mr. and Mrs. Yazzie are represented by Richard Feferman and Nicholas Mattison of Feferman & Warren. The firm has extensive experience litigating TILA and UCC cases and in bringing class actions, including class actions under TILA and the UCC, in both this court and state courts. Mr. Feferman's firm has brought at least 28 consumer class actions, and he has been involved in nearly all of them. *See* Exhibit 6 (Declaration of Richard Feferman). Recently, Mr. Feferman and his firm were appointed class counsel in another TILA case, *Chester v. Tancorde Finance, Inc.*, 14-CV-92 JAP/KK (Doc. 33, 1/12/15), where this Court stated, "Mr. Feferman has been a mainstay in successful consumer class actions in this District, and the Court is confident he will adequately represent the class and vigorously prosecute this case to its conclusion."

Mr. and Mrs. Yazzie's interests in this litigation are coincident with the interests of the classes. Mr. and Mrs. Yazzie and the class members seek TILA and UCC statutory damages as the result of Defendants' unlawful practices. Mr. and Mrs. Yazzie do not seek any different separate individual relief. Given the identical nature of the claims between Mr. and Mrs. Yazzie and the class members, there is no potential for conflicting interests in this action.

    **C.**    **Plaintiffs Also Meet the Requirements of Rule 23(b)(3)**

        **1.**    **Common Questions of Law or Fact Predominate in this Action**

For class certification under Fed. R. Civ. P. 23(b)(3), "questions of law or fact common to each class member's claim must predominate over individual questions." *Aguirre v. Bustos*, 89 F.R.D 645, 649 (D. N.M. 1981). In determining whether there is predominance, courts ask whether there is a "material variation" in the defendant's posture towards the different class members. *Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir. 1968). "Predominance is a test readily met in certain cases alleging consumer or securities fraud . . . ." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (citations omitted). The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 623. If the liability issues are common to the class, common questions will generally predominate. See, e.g., *In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 227 (2d. Cir. 2006); *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552-53 (6th Cir. 2006).

The authorities hold that cases dealing with the legality of standardized documents or conduct are generally appropriate for resolution by class action because the document or conduct is the focal point of the analysis. *Haroco v. American Nat'l Bk. & Tr. Co.*, 121 F.R.D. 664, 669 (N.D.Ill. 1988) (improper computation of interest); *Kleiner v. First Nat'l Bank of Atlanta*, 97 F.R.D. 683 (N.D.Ga. 1983) (same); *Heastie v. Community Bank of Greater Peoria*, 125 F.R.D. 669 (N.D.Ill. 1989) (execution of home improvement financing documents in sequence that evaded consumers' rescission rights).

Truth in Lending disclosure claims have frequently been certified as class actions both in this District and elsewhere. *See, e.g., Yazzie v. Ray Vicker's Special Cars, Inc.*, 180 F.R.D. 411 (D.N.M.) (granting class certification); *Begay et al. v. First Security Bank New Mexico, et al.*, No. CIV 96-348 MV/RLP (D.N.M.); *Chester v. Tancorde Finance, Inc.*, 14-CV-92 JAP/KK

[Doc. 33]; *In re: Community Bank of N.Va.*, 418 F.3d 277 (3rd Cir. 2005). UCC actions, including actions relating to Notifications, are similarly well-suited to the class action. *Hopkins, supra,* 265 F.R.D. 483.

The case at bar is especially appropriate for class action treatment, because there are no individual questions relating to liability. In this case, all Loan Agreement Class members were victimized by Gurley's standard form loan agreements, all of which fail to disclose fully and accurately the costs and terms of the financing. All Notification Class members received the same faulty notice, which did not apprise them of their rights relating to the sale of their property. There are no individual inquiries necessary to resolve this case or which pose the kind of problems that are barriers to class certification. The legal issues concerning the violations of the TILA and the UCC predominate over any other possible issues.

### 2. The Class Action Mechanism Is the Superior Method for Resolving the Claims of the Classes

For class certification to be appropriate under Fed. R. Civ. P. 23(b)(3), the class action mechanism must be the "superior method for resolving [the] controversy." *Aguirre*, 89 F.R.D at 649. "Much as the predominance test, the superiority requirement is founded on the notions of judicial economy." *Nicodemus v. Union Pacific Corp.*, 204 F.R.D 479, 493 (D. Wyo. 2001), *citing*, *Newberg on Class Actions* § 4.32.

Rule 23(b)(3) lists factors "pertinent" to the finding that a class action is superior to other available methods for the fair and efficient adjudication of the controversy, which include:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the

claims in the particular forum; (D) the difficulties likely to be encountered in the management of the class action.

Here, the amounts of the claims are relatively small. It is unlikely that the class members have much interest in individually controlling the prosecution of the action; no other individual actions have been filed. It would be very desirable to concentrate the litigation in this forum. Moreover, most class members would likely not even know their rights had been violated and would not be able to afford to retain competent counsel to pursue their rights.

Further, there is no impediment to managing the common issues, all of which arise from Defendants' standard, uniform loan agreements and notifications. "In addition to the consideration of manageability, the Court should take into account factors such as conserving time, effort and expense and providing a forum for small claimants." *Id.* In deciding the best available method, courts should consider the "inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974). In a class action arising under another chapter of the Consumer Credit Protection Act, the Utah federal district court stated:

> The individual plaintiffs are unlikely ever to sue because, at the level of rational economic calculation, the potential costs associated with individual lawsuits greatly exceed the potential rewards. Therefore, a class action suit is by far the most sensible means of aggregating these small individual claims in one proceeding.

*Ditty v. Check Rite, Ltd.*, 182 F.R.D. 639, 645 (D. Utah 1998).

In this case, no better method is available for the adjudication of the class members' claims than the class action mechanism.

**IV.     Conclusion**

The proposed classes meet the requirements of Rules 23(a) as well as Rule 23(b)(3). Mr. and Mrs. Yazzie request that the Court certify this case as a class action and appoint her attorneys as class counsel.

Respectfully submitted,

*/s/Nicholas Mattison*
Nicholas Mattison
Richard N. Feferman
Feferman & Warren, Attorneys for Plaintiff
300 Central Ave., SW, Suite 2000 West
Albuquerque, New Mexico 87102
(505) 243-7773
(505) 243-6663 (fax)

**CERTIFICATE OF SERVICE**

I hereby certify that on August 21, 2015, I filed the foregoing pleading electronically through the Courts's CM/ECF File System, which caused all parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Mark D Jarmie:             mjarmie@jarmielaw.com

*/s/ Nicholas Mattison*