**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

EUGENE YAZZIE and PHYLLIS YAZZIE,
*on behalf of themselves and all others similarly situated*,

       Plaintiffs,

v.                                         No. CIV 14-555 JAP/SCY

GURLEY MOTOR CO. and
RED ROCK INVESTMENT CO.,

       Defendants,

**MEMORANDUM OPINION AND ORDER**

In PLAINTIFFS' OPPOSED MOTION FOR CLASS CERTIFICATION (Doc. No. 68),

Plaintiffs Eugene and Phyllis Yazzie ask the Court to certify two consumer protection classes. *Id.*

at 1; *See also* BRIEF IN SUPPORT OF PLAINTIFFS' OPPOSED MOTION FOR CLASS

CERTIFICATION (Doc. No. 69) ("Certification Motion"). Defendants Gurley Motor Co. and

Red Rock Investment Co. concede that Plaintiffs have satisfied certain prerequisites of

certification, but oppose the proposed certification as improper under Federal Rule of Civil

Procedure 23(b)(3). *See* DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS'

MOTION FOR CLASS CERTIFICATION (Doc. No. 74) ("Response"). Having reviewed

Defendants' objections, read Plaintiffs' REPLY BRIEF IN SUPPORT OF PLAINTIFFS'

OPPOSED MOTION FOR CLASS CERTIFICATION (Doc. No. 77) ("Reply"), and

independently considered the certification requirements, the Court has determined that

certification is appropriate in this case. The Court will, therefore, grant Plaintiffs' Certification

Motion.

# BACKGROUND[1]

Gurley Motor Co. ("Gurley Motor") is a licensed motor vehicle dealer located in Gallup, New Mexico. AMENDED CLASS ACTION COMPLAINT FOR DAMAGES (Doc. No. 21 ¶ 9) ("Complaint"). Using standardized form loan agreements, Gurley Motor sells cars and trucks to its customers and assigns these loans to its in-house financing company, Red Rock Investment Co. ("Red Rock"). Certification Motion at 1, 3. If a customer defaults on a vehicle loan, Red Rock will send out a form "Notification Before Disposition of Collateral" and repossess and sell this customer's vehicle. *Id.* at 2. In this lawsuit, Plaintiffs Eugene and Phyllis Yazzie, two Gurley Motor customers, challenge the legality of Gurley Motor's financing practices and Red Rock's repossession practices.

On or about January 31, 2014, Mr. and Mrs. Yazzie purchased a 2006 Dodge Ram Truck from Gurley Motor for $18,495. Complaint  ¶¶ 11, 14. Under the terms of the sales agreement, Mr. and Mrs. Yazzie made a $4,500 initial down payment to Gurley Motor. They financed the remainder of the purchase by agreeing to pay two deferred down payments of $500 and 36 installment payments of $662.69. *Id.* ¶ 14-15, 50. The "Retail Installment Contract and Security Agreement" and "Buyer's Order" listed both the deferred down payments and the installment payments in the Schedule of Payments section. *Id.* ¶ 18. Neither document, however, included the $500 deferred down payments in the Total of Payments disclosure. *Id.* ¶ 19. Mr. and Mrs. Yazzie maintain that this omission violated the Truth in Lending Act of 1968 ("TILA"), 15 U.S.C. § 1601 *et seq*, *id.* ¶ 50, a statute that regulates consumer credit transactions, which are

---

[1] The following facts come from Plaintiffs' Certification Motion and Plaintiffs' complaint. Because Defendants do not contest the validity of these facts, the Court will accept them as true for the purpose of ruling on Plaintiffs' Certification Motion.

defined as transactions where "the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1602(i).[2]

According to Mr. and Mrs. Yazzie, they became unable to make the two $500 deferred down payments after Mr. Yazzie suffered heart problems. Complaint ¶ 2. On or around March 2, 2014, agents of Red Rock, the assignee of Mr. and Mrs. Yazzie's Retail Installment Contract and Security Agreement, repossessed Mr. and Mrs. Yazzie's truck. *Id.* ¶ 25, 30. Red Rock subsequently sent Mr. and Mrs. Yazzie a "Notification Before Disposition of Collateral" explaining that they had repossessed the Truck and intended to sell it. *Id.* ¶ 33. Mr. and Mrs. Yazzie identify six alleged deficiencies in this form notice: (1) it fails to state whether the disposition of the vehicle would be through public or private sale, (2) it fails to state that Mr. and Mrs. Yazzie were entitled to an accounting of the unpaid indebtedness, (3) it fails to describe Mr. and Mrs. Yazzie's liability for a deficiency, (4) it does not include a telephone number Mr. and Mrs. Yazzie could call to learn the amount needed to redeem their Truck, (5) it does not provide a telephone number or mailing address for acquiring additional information concerning the disposition and the obligation secured, and (6) it misstates Mr. and Mrs. Yazzie's right to redeem until the actual time of sale. Certification Order at 6. Mr. and Mrs. Yazzie argue that these deficiencies violate the New Mexico Uniform Commercial Code ("UCC "), NMSA § 55-1-101, *et seq*. Complaint ¶ 54.

Plaintiffs ask the Court to certify two classes:

(1)      A "Loan Agreement Class" or "TILA Class" consisting of "all natural persons who, beginning on year prior to the filing of the Complaint, entered into a Motor Vehicle Installment Loan Contract with Gurley to purchase a vehicle primarily for personal,

---

[2] Consistent with this usage, the Court will use the term "consumer" to designate a purchaser or purchase whose primary purpose is personal rather than commercial.

family or household use,[3] where the loan agreement included a 'deferred down payment,'
which was listed in the disclosed Payment Schedule but not included in the Total of
Payment," and

(2)      A "Notification Class" or "UCC Class" consisting of "all natural persons who
purchased a vehicle from Gurley primarily for personal, family or household use, whose
financing contract was assigned to Red Rock and to whom, beginning four years prior to
the filing of the Complaint, Red Rock sent its legally insufficient Notification Before
Disposition of Collateral, after repossessing the person's vehicle."

Reply at 2-3. Because Plaintiffs believe that actual TILA and UCC damages are "uncommon . .
. , difficult to prove, inferior to statutory damages, and not well suited to class treatment,"
Plaintiffs propose to limit the relief sought in this lawsuit to statutory damages. October 22, 2015
Letter to Court (Doc. No. 82 at 1-2). Plaintiffs explain that if the Court certifies the above
classes, Plaintiffs "will propose a form of notice that specifically addresses the election to pursue
only statutory damages" and that allows potential class members who want to pursue actual
damages the opportunity to opt-out of the class action. *Id.* at 1.

## DISCUSSION

### I.      Standard of Review

Under Federal Rule of Civil Procedure 23, a plaintiff seeking certification of a class must
demonstrate that "(1) the class is so numerous that joinder of all members is impracticable; (2)
there are questions of law or fact common to the class; (3) the claims or defenses of the
representative parties are typical of the claims or defenses of the class; and (4) the representative

---

[3] Plaintiffs originally neglected to include a personal use limitation in their proposed class definitions. Certification
Motion at 3. In the reply, however, Plaintiffs clarified that they intended to limit the TILA and UCC classes to
consumer transactions and recommended adding a personal use limitation to the class definitions to reflect this
limitation. Reply at 2-3.

parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a).

Additionally, the plaintiff must show that the class is maintainable as one of the three categories

of class actions listed in Federal Rule of Civil Procedure 23(b). Here, Plaintiffs seek certification

of two separate monetary classes under Rule 23(b)(3). Certification under Rule 23(b)(3) is

appropriate only if "questions of law or fact common to the members of the class predominate

over any questions affecting individual members" and "a class action is superior to other

available methods for fairly and efficiently adjudicating the controversy." *Id.* The Court will

address each of the four prerequisites (numerosity, commonality, typicality, and adequacy of

representation) and the two 23(b)(3) conditions (predominance and superiority) below.

## II.    Analysis

### a.   Numerosity

"The burden is upon plaintiffs seeking to represent a class to establish that the class is so

numerous as to make joinder impracticable." *Colo. Cross-Disability Coalition v. Abercrombie &*

*Fitch Co.*, 765 F.3d 1205, 1214 (10th Cir. 2014). Plaintiffs maintain that the Loan Agreement

Class consists of roughly 240 members while the Notification Class consists of roughly 1000

members. Defendants do not dispute that these numbers are correct and or that joinder of the

proposed class members would be impracticable. Response at 2. Given the large size of the

proposed classes, the Court, therefore, finds that Plaintiffs' proposed class definitions satisfy the

numerosity requirement.

### b.   Commonality

The commonality requirement tests whether a proposed class shares a common question

of law or fact that is "capable of classwide resolution." *Wallace B. Roderick Revocable Living*

*Trust v. XTO Energy, Inc.*, 725 F.3d 1213, 1218 (10th Cir. 2013) (quoting *Wal-Mart Stores, Inc.*

*v. Dukes*, 131 S. Ct. 2541, 2551 (2011)). Not every common question will satisfy this requirement. "What matters to class certification is not the raising of common 'questions' -- even in droves -- but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores*, 131 S. Ct. at 2551 (internal citation omitted). A class presents a common contention warranting certification if "determination of . . . [the] truth or falsity [of this contention] will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

Plaintiffs maintain that this class action lawsuit poses one common question for each proposed class: (1) whether Gurley Motor's failure to disclose deferred down payments in the Total of Payments section of the form sales agreement violates TILA and (2) whether Red Rock's form "Notification Before Disposition of Collateral" complies with the requirements of the UCC. Motion at 9. In their response, Defendants do not dispute that the first question is common to the members of the TILA class. Defendants maintain, however, that the legality of Red Rock's repossession form cannot be determined on a class-wide basis. Defendants explain that the UCC requirements for repossession notices depend on whether the recipient of the notice purchased their collateral primarily for personal, family, or household use as opposed to business use. Response at 7-9. Thus, a class with both personal and business customers, such as the class Plaintiffs originally proposed, would not pose a common question that was susceptible to a single answer.

In their reply, Plaintiffs address Defendants' concern by clarifying that they are seeking certification of classes that only contain individuals who purchased their vehicles for personal, family, or household use. Reply at 2-3. Plaintiffs propose adding language specifying this limitation to their class definitions. In light of this proposal, Defendants' only commonality

objection is now moot. Moreover, it is clear that the legality of Defendants' use of the challenged standardized forms to communicate with personal, family, or household consumers can be resolved in one stroke. The Court, therefore, concludes that both proposed classes have common claims against Defendants.

### c.  Typicality

Rule 23(a)(3) requires named plaintiffs to show their claims are typical of the class they seek to represent. *Rector v. City & County of Denver*, 348 F.3d 935, 949 (10th Cir. 2003). "[D]iffering fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative and class members are based on the same legal or remedial theory." *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988). In this case, there can be no question that Plaintiffs' claims are typical of the class. Plaintiffs' and the class members' claims all arise from Defendants' allegedly illegal use of standardized forms. Moreover, Plaintiffs have voluntarily limited the relief sought to statutory damages as opposed to actual damages.

Defendants only typicality challenge is the same challenge Defendants raised to commonality – that there is a significant legal difference between the notice and disclosure requirements that must be afforded to customers who purchase vehicles primarily for personal, family, and household use and those who do not. As already discussed, by explicitly limiting the proposed class to customers who purchased vehicles primarily for personal, family, and household use, Plaintiffs have resolved this objection.

### d.  Adequacy of Representation

Before certifying a class action, a court must assure itself that the named plaintiffs will "fairly and adequately protect the interests of the class." *Rutter & Wilbanks Corp. v. Shell Oil*

*Co.*, 314 F.3d 1180, 1187-1188 (10th Cir. 2002). The Tenth Circuit has directed district courts to focus on two questions when considering this issue: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id.* Defendants do not dispute that the answers to both questions favor certification. Plaintiffs' claims are virtually identical to the claims of the absent class members preventing any serious conflict of interest from arising. Additionally, as the Court recently mentioned when certifying Mr. Feferman as co-class counsel in a different consumer protection case, Mr. Feferman "has been a mainstay in successful consumer class actions in this District, and the Court is confident he will adequately represent the class and vigorously prosecute this case to its conclusion." *Chester v. Tancorde Finance, Inc.*, No. Civ. 14-92 JAP/KK, slip op. at 7 (D.N.M. January 12, 2015).

###### e. **Predominance**

At the certification stage, plaintiffs need to show that class-wide issues predominate over individualized questions. Fed. R. Civ. P. 23(b)(3). This standard is "far more demanding" than the Rule 23(a) commonality requirement. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997). Not only must the plaintiff identify common issues that are susceptible to generalized proof, the plaintiff must convince the Court that these issues are "more prevalent or important than the non-common, aggregation-defeating, individual issues." *CGC Holding Co., LLC v. Hutchens*, 773 F.3d 1076, 1087 (10th Cir. 2014). This involves a two-step process. First, the Court must characterize the legal and factual issues presented in a case as common or uncommon. Next, the Court must weigh which issues predominate, focusing on whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Id.* at 1087 (quoting *Amchem*, 521 U.S. at 622–23).

To prevail on their class claims, Plaintiffs must show that: (1) the members of the proposed class purchased vehicles for personal, family, or household use thereby qualifying for heightened protection under TILA and the UCC, (2) Defendants' standardized loan agreement and repossession forms failed to comply with the consumer protection requirements of TILA and the UCC respectively, and (3) class members are entitled to statutory damages in the requested amount. While the second and third issues are capable of class-wide resolution, the first is not. Whether a particular customer purchased a vehicle for personal or business reasons can only be determined through an individualized process. The question is how arduous this process threatens to be and whether it outweighs the benefits of litigating the shared liability questions in a class action format.

The majority of courts to have considered this issue have concluded that factual questions related to personal use do not prevent the certification of consumer protection class actions. *Compare Butto v. Collecto Inc.*, 290 F.R.D. 372, 383 (E.D.N.Y. 2013) ("[E]ven if [a defendant] cannot differentiate between consumer debt and non-consumer debt . . . , this fact alone does not preclude class treatment" because it is not "particularly arduous to ask potential class members the simple question of whether the individual's debt at issue qualifies as a consumer debt."); *Selburg v. Virtuoso Sourcing Group, LLC*, No. 1:11-cv-1458-RLY-MJD, 2012 U.S. Dist. LEXIS 142653, at *9-10 (S.D. Ind. Sept. 29, 2012) (same); *Eatmon v. Palisades Collection LLC*, No. 2:08-CV-306-DF-CE, 2011 U.S. Dist. LEXIS 4556, at *15 (E.D. Tex. Jan. 18, 2011) (holding that a "personal, family, or household purposes" requirement could "be satisfied with written records, which is sufficient for class certification"); *Irwin v. Mascott*, 96 F. Supp. 2d 968, 973 (N.D. Cal. 1999) (defendants' failure to maintain information allowing them to determine whether customers' purchases were primarily for personal use should not bar consumer class

action proceeding): *Berrios v. Sprint Corp.*, No. CV-97-0081, 1998 U.S. Dist. LEXIS 6579, at

*30-31 (E.D.N.Y. Mar. 16, 1998) (reasoning that questions regarding the consumer nature of

class members' debts did not overwhelm common questions of law or fact because consumers

held residential telephone accounts which were likely used primarily for personal, family, or

household purposes); *Bantolina v. Aloha Motors*, 419 F. Supp. 1116, 1122 (D. Haw. 1976)

("[W]hile there may be some difficulties in determining whether some class members are barred

from claiming relief under the Truth in Lending Act because of the commercial nature of the

transaction, this Court does not believe that such a potential complexity is overly serious or

overshadows the advantages the class-action device provides in this case.") *with Lewis v. Riddle*,

1998 U.S. Dist. LEXIS 20465, 13-14 (W.D. La. Nov. 18, 1998) (refusing to certify a consumer

protection class action because the business/consumer nature of the debts could not be

determined from defendants' records); *Parker v. George Thompson Ford, Inc.*, 83 F.R.D. 378,

381 (N.D. Ga. 1979) (finding that common questions did not predominate because of the need to

conduct individual trials to find out whether class members used their vehicles primarily for

personal or business use).

   The reasoning behind the majority viewpoint is twofold. First, many consumer protection

statutes, such as TILA and the UCC, provide heightened safeguards for individuals who

purchase goods primarily for personal, family, or household use. Courts have recognized that the

class action mechanism is well-suited to address technical violations of these statutes because

class actions are designed "to overcome the problem that small recoveries do not provide the

incentive for any individual to bring a solo action prosecuting his or her rights." *Mace v. Van Ru

Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997); *see also Watkins v. Simmons & Clark, Inc.*, 618

F.2d 398, 403-404 (6th Cir. 1980). If, however, questions regarding each class member's reason

for participating in a transaction predominated over shared questions of liability, few, if any, consumer protection class actions would ever be certified. To avoid this result, courts have been reluctant to deny certification on this ground. *See*, *e.g.*, *Wilkerson v. Bowman*, 200 F.R.D. 605, 609 (N.D. Ill. 2001) ("[T]he need to show that the transactions involved in a particular case are consumer transactions is inherent in every FDCPA class action. If that need alone precluded certification, there would be no class actions under the FDCPA.").

Second, courts have generally concluded that the process for determining whether class members entered into a transaction primarily for personal, family, or household use is straightforward. This issue can often be resolved simply by reviewing the defendant's written records to weed out businesses and other customers who indicated that they were making a commercial purchase. *See*, *e.g.*, *Gradisher v. Check Enforcement Unit, Inc.*, 203 F.R.D. 271, 277 (W.D. Mich. 2001) (a class member's use of a personal check creates presumption that the purchase was a consumer transaction). In the alternative, issues regarding the consumer nature of the transaction can be resolved simply by asking class members about their vehicle use during class notification process. *See*, *e.g.*, *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974) (opining that commercial purchases at retail furniture store would be atypical and that such purchase "would frequently be readily identified by the listing of the name of the business as the purchaser in the contract;" additionally, "even if it [wa]s necessary to review the contracts individually to eliminate business purchases, . . . such a task would [not] be . . . herculean") (internal citation omitted); *Butto*, 290 F.R.D. at 383 ("The Court does not find it particularly arduous to ask potential class members the simple question of whether the individual's debt at issue qualifies as a consumer debt.").

11

Defendants never discuss the above case law and do not provide any convincing reason why the Court should deviate from the majority approach. Instead, Defendants note that some of their customers purchased vehicles primarily for personal, family, or household use while others did not. Without providing a detailed explanation, Defendants then declare that it would be impossible to administer a consumer protection class action without separately interviewing each and every purchaser to determine which purchasers belong within the class. If barebones assertions like these were enough to defeat class certification, defendants could easily avoid class certification of consumer protection violations by neglecting to create or maintain records about the consumer nature of their customer transactions. This is a strong reason to find that shared questions of liability predominate over individual questions related to the nature of the challenged transaction. But it is not the only reason.

In this case, Plaintiffs convincingly argue that Defendants possess "multiple sources of information" for confirming which customers purchased their vehicles for personal as opposed to business use. Reply at 5-7. According to Plaintiffs, Defendants can check to see if a proposed class member purchased a vehicle using a personal or business loan; Defendants can review this class member's credit application to identify their occupation; for class members who purchased insurance from Defendant Gurley Motor's affiliated insurance agency, Defendants can see if class members were placed in the rate class for drivers who use their vehicles for business purposes; finally, Defendants can confirm whether Gurley Motor designated a class member's financing agreement as a "consumer credit contract." Reply at 5-6. Given these avenues for determining whether class members purchased vehicles primarily for personal use, the Court finds that the benefits of litigating the shared questions of liability in a class action format predominate over individual issues related to personal use.

12

#### f.   Superiority

Before certifying a proposed class, a court must find that aggregation of the class

member's claims is superior to normal one-on-one litigation. FED. R. CIV. P. 23(b)(3). Relevant

considerations include:

> (A) the class members' interests in individually controlling the prosecution or defense of
>
> separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or
>
> against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the
>
> particular forum; and
>
> (D) the likely difficulties in managing a class action.

*Id.* Based on the information currently provided to the Court, none of these factors undermine

certification. On the other hand, certification has obvious benefits. Aggregation of the proposed

class member's consumer protection claims will "achieve economies of time, effort, and

expense, and promote uniformity of decision as to persons similarly situated." *See CGC Holding*

*Co., LLC v. Hutchens*, 773 F.3d 1076, 1096 (10th Cir. 2014). Because class members' claims are

small, certification provides an added benefit: it offers a mechanism of relief for those who

would otherwise "be without effective strength to bring their opponents into court." *Amchem*,

521 U.S. at 617. Finally, certification will ensure that consumers learn about their rights and

share in financial recovery, if any, for Defendants' alleged violation of these rights. *See Watkins*

*v. Simmons & Clark, Inc.*, 618 F.2d 398, 403-404 (6th Cir. 1980) ("[T]he class action provides

an opportunity to educate a segment of the public, those included in the class, of the obligations

which creditors owe to them as credit consumers. This mass awakening of awareness could,

indeed, be the greatest single benefit derived in an area of regulation in which the responsibility of policing falls principally on the shoulders of the private citizen and private counsel.").

Defendants contend that these benefits are outweighed by the unfairness of allowing proposed class members to aggregate their claims for statutory damages so as to "provide grossly disproportionate recovery." Response at 12. Defendants frame this objection under the rubric of the due process clause. *See* Response at 12-15 (maintaining that the aggregated statutory damages Plaintiffs seek on behalf of the absent class are so oppressive that certification of the class would be unconstitutional). Plaintiffs respond accordingly, by defending the reasonableness of a potentially large damages award. Plaintiffs specifically argue that Defendants' "violations of the law are extremely serious, systematic, and inexcusable" so that a substantial damages award would be justified. Reply at 9.

At present, the Court is not equipped to resolve the parties' dispute about the constitutionally appropriate size of a prospective damages award. Any due process limitations on the award of statutory damages would depend, among other things, on the scope of Defendants' wrongdoing, Defendants' culpability for this wrongdoing, and the monetary and non-monetary harm to Plaintiffs and class members. *St. Louis, I. M. & S. R. Co. v. Williams*, 251 U.S. 63, 67 (1919) (the due process clause limits a state's ability to prescribe statutory damages only where the damages are "so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable"). The Court declines to prejudge these issues before a liability determination has been reached and presentation of the evidence is complete.

Nor is there any need to do so. The potential for an unconstitutionally high class damages award does not undermine the advantages of class certification as compared to individual litigation. While class certification increases the likelihood that proposed class members will

seek recompense from Defendants for their TILA and UCC claims, class certification does nothing to increase the number of individuals affected by Defendants' conduct. Similarly, it does not augment Defendants' exposure to damages on these individuals' claims. Even if the Court were to deny class certification, every class member would remain entitled to pursue individual damages suits against Defendants. Should each class member exercise this right, Defendants would be faced with the same crushing liability and due process concerns that they attribute to the class action format. Defendants' recourse, however, would be more limited; they would have to file due process motions in multiple and diverse cases seeking the reduction of damages. Although this is a highly unlikely outcome, it is a risk of individual litigation. On the other hand, while class litigation encourages the bringing of claims, it also allows the Court to centrally manage the damages payout on these claims. If class damages expand to unconstitutional levels through the aggregation of class claims, Defendants can file and the Court can consider a due process motion to restrict the amount of damages. This approach is preferable as it preserves all the benefits of aggregation (time saving and uniformity) without sacrificing Defendants' constitutional rights. *See Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006) (A class action "award that would be unconstitutionally excessive may be reduced, . . . but constitutional limits are best applied after a class has been certified. Then a judge may evaluate the defendant's overall conduct and control its total exposure. Reducing recoveries by forcing everyone to litigate independently--so that constitutional bounds are not tested, because the statute cannot be enforced by more than a handful of victims--has little to recommend it."). Consequently, to the extent Defendants' superiority challenge is rooted in the due process clause, it does not present a bar to class certification.

15

Defendants attempt to avoid this conclusion by quoting *Parker v. Time Warner Entm't Co., L.P.*, 331 F.3d 13 (2d Cir. 2003). In *Parker*, the Second Circuit Court of Appeals acknowledged that class action damages awards may raise constitutional concerns. The Second Circuit then proceeded to reason that due process concerns should not prevent class certification. *Id.* at 22 ("[I]t may be that in a sufficiently serious case the due process clause might be invoked, **not to prevent certification**, but to . . . reduce the aggregate damage award. . . . At this point in this case, however, these concerns remain hypothetical.") (emphasis added). Thus, *Parker* undermines rather than supports Defendants' due process argument.

Defendants also cite *Wilcox v. Commerce Bank of Kansas City*, 474 F.2d 336 (10th Cir. 1973) and *Ratner v. Chemical Bank New York Trust Co.*, 54 F.R.D. 412, 416 (S.D.N.Y. 1972). Neither of these cases, however, involves a due process challenge to class certification. In *Wilcox*, the Tenth Circuit cited *Ratner* with approval and held that a district court retains the discretion to refuse to certify a statutory damages class action when doing so will result in oppressive or unrealistic class damages. *Wilcox*, 474 F.2d at 347. The Tenth Circuit clarified that the fairness to be considered in granting or denying a certification motion was the procedural fairness of pairing Rule 23 with a request for statutory damages, not the substantive fairness of imposing a large statutory damages award. *Id.* at 347. While this is a subtle distinction, it is not meaningless. A substantive challenge to a class action damages award measures the fairness of the amount of the award. A procedural challenge, by comparison, focuses on whether there is an "inherent incongruity" between the class action mechanism and the claims presented or remedy requested. *Id.* at 343.

It is not clear to the Court whether Defendants intended to lodge a procedural objection to class certification in this case. If they did, it is unavailing. Allowing class members to aggregate

their statutory damages under TILA does not threaten to result in the imposition of unintended, unfair, or unrealistic damages. The provisions of TILA specifically contemplate class actions and ensure that aggregated class action damages remain reasonable and proportionate to the defendant's misconduct. First, TILA limits the "total recovery . . . in any class action . . . [to no] more than the lesser of $ 1,000,000 or 1 per centum of the net worth of the creditor." 15 U.S.C. § 1640(a)(2)(B). Additionally, TILA directs courts to consider the following factors when awarding damages in a class action lawsuit: "the amount of any actual damages awarded, the frequency and persistence of failures of compliance by the creditor, the resources of the creditor, the number of persons adversely affected, and the extent to which the creditor's failure of compliance was intentional." *Id.* § 1640(a)(4). Taken together, these provisions alleviate any potential concerns about oppressive TILA class damages. *See Boggs v. Alto Trailer Sales, Inc.*, 511 F.2d 114 (5th Cir. 1975) (the amendment of § 1640 removed the "horrendous result aspect" of certifying class actions under TILA).[4]

Unlike TILA, the UCC does not contain a provision governing the imposition of class damages. Nevertheless, the Court is not convinced that it should deny certification in order to protect Defendants from being held fully accountable under the UCC for their alleged wrongdoing. Doing so would require the Court to accept Defendants' policy judgment regarding the byzantine and insignificant nature of the UCC's requirements. Defendants, however, have

---

[4] In their response, Defendants cite *Wilcox* and *Ratner* to support their claim that the Court should refuse to certify Plaintiffs' TILA class action. *See Wilcox*, 474 F.2d at 342 (10th Cir. 1973) (holding that it was within the sound discretion of the district court to deny certification of a TILA class action that threatened to lead to unrealistically high damages); *Ratner v. Chemical Bank New York Trust Co.*, 54 F.R.D. 412, 416 (S.D.N.Y. 1972) (refusing to certify a class action because "the proposed recovery of $100 each for some 130,000 class members would be a horrendous, possibly annihilating punishment, unrelated to any damage to the purported class or to any benefit to defendant, for what is at most a technical and debatable violation of the Truth in Lending Act."). These cases have limited persuasive value because they were decided before Congress amended § 1640 of TILA to include limitations on class action damages.

not identified any case law or legislative history suggesting that UCC violations are of minor concern. Similarly, Defendants have not cited any legal authority that would allow the Court to conclude that the New Mexico legislature would not want consumers to be permitted to seek UCC statutory damages through the class action format. To the contrary, as a general matter, New Mexico public policy strongly supports class action resolution of consumer protection claims. *Fiser v. Dell Computer Corp.*, 2008-NMSC-046, ¶¶ 9-18, 144 N.M. 464, 468 (striking down contractual class action ban because New Mexico's "fundamental public policy requires that consumers with small claims have a mechanism for dispute resolution via the class action"). Given this policy preference, the Court is hesitant to extinguish Plaintiffs' ability to consolidate class members' standardized consumer protection claims under Rule 23.

The Court acknowledges that *Wilcox* grants district courts discretion to refuse to certify large consumer class actions even in the absence of legislative history supporting such a result. Having considered Defendants' arguments, however, the Court has reached the conclusion that class treatment is the fairest and most efficient manner for adjudicating the class members' claims. In this regard, the Court notes that *Wilcox* is a decades-old case that has not been cited by the Tenth Circuit since 1978. In the interim, the Supreme Court has twice rejected the argument that a federal court should refuse to apply class treatment to a particular statutory scheme because it will cause unfair or unintended results. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 344-345 (1979) (concerns regarding the cost of defending consumer class action seeking treble damages are "policy considerations more properly addressed to Congress than to this Court"); *Califano v. Yamasaki*, 442 U.S. 682, 700 (1979) ("In the absence of a direct expression by Congress . . . , class relief is appropriate in civil actions brought in federal court."). Even assuming *Wilcox* retained robust precedential value, Defendants have not shown that concerns

18

about unrealistic damages warrant the denial of certification in this case. Defendants point out that consumers are entitled to statutory damages under the UCC in an amount equal to "the credit service charge plus ten percent of the principal amount of the obligation." N.M. Stat. Ann. § 55-9-625. Yet, Defendants have not provided any evidence about the class members' average financing charge or the average principal of the class members' obligations. The Court cannot, therefore, calculate the amount of damages that Defendants may incur and cannot reach a conclusion that this amount is so horrendous or unreasonable that the Court can only assume that the New Mexico legislature did not intend for consumers to be able to enforce their rights through a class action lawsuit. For all of these reasons, the Court finds that the benefits of class certification outweigh Defendants' nebulous damages concerns.

### g.   Defining the Class

Defendants raise one final objection to the certification of the UCC class: Defendants claim that the class is not "sufficiently ascertainable" because identifying class members requires distinguishing between consumers who purchased vehicles primarily for personal use and those who did not. Response at 2-6. This is simply a reiteration of Defendants' predominance objection. For the reasons discussed above, the Court is not convinced that it will be impossible or overly difficult to identify which Gurley Motor customers purchased their vehicles for personal use.  The Court will therefore reject Defendants' final objection to class certification and will certify Plaintiffs' two proposed consumer classes with one minor modification. Plaintiffs' define the UCC class as all Gurley Motor consumers who received Red Rock's "legally insufficient Notification Before Disposition of Collateral." Because it is not proper to express a judgment regarding the legality of Red Rock's form notice in the class definition, the

Court will delete the words "legally insufficient" from the proposed class definition and will certify the classes as follows:

(1)     A "Loan Agreement Class" or "TILA Class" consisting of all natural persons who, beginning on year prior to the filing of the Complaint, entered into a Motor Vehicle Installment Loan Contract with Gurley to purchase a vehicle primarily for personal, family, or household use, where the loan agreement included a 'deferred down payment,' which was listed in the disclosed Payment Schedule but not included in the Total of Payment, and

(2)     A "Notification Class" or "UCC Class" consisting of all natural persons who purchased a vehicle from Gurley primarily for personal, family, or household use, whose financing contract was assigned to Red Rock and to whom, beginning four years prior to the filing of the Complaint, Red Rock sent its Notification Before Disposition of Collateral, after repossessing the person's vehicle.

On behalf of each class, class counsel may seek statutory damages for the TILA and UCC claims asserted in the complaint.

**IT IS THEREFORE ORDERED THAT:**

1. PLAINTIFFS' OPPOSED MOTION FOR CLASS CERTIFICATION (Doc. No. 68) is granted with the small modification listed above.

2. In accordance with the terms of this MEMORANDUM OPINION AND ORDER, by November 10, 2015, Plaintiffs' counsel must submit a proposed notice for this Court's review and approval. Because the Court has granted Plaintiffs' request for certification under Federal Rule of Civil Procedure 23(b)(3), the proposed notice must also meet the requirements of Federal Rule of Civil Procedure 23(c)(2)(B). Defendant may submit any

objections to the proposed notice not otherwise addressed by this Memorandum Opinion and Order by November 17, 2015.

3.  By November 25, 2015, the parties must meet and compile a list of potential class members' names and last known addresses.

4.  Under Federal Rule of Civil Procedure 23(g), the Court appoints Nicholas H. Mattison and Richard N. Feferman as class counsel.

_____

SENIOR UNITED STATES DISTRICT JUDGE