IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

EUGENE YAZZIE and PHYLLIS YAZZIE,
*on behalf of themselves and all others similarly situated*,

       Plaintiffs,

v.                                                                                     No. CIV 14-555 JAP/SCY

GURLEY MOTOR CO. and
RED ROCK INVESTMENT CO.,

       Defendants,

**MEMORANDUM OPINION AND ORDER**

On January 6, 2016, Plaintiffs Eugene Yazzie and Phyllis Yazzie, class representatives, moved for summary judgment. *See* PLAINTIFFS' OPPOSED MOTION FOR SUMMARY JUDGMENT (Doc. No. 126). Plaintiffs argue that the facts are undisputed and that they and similarly situated class members are entitled to judgment as a matter of law on the issue of liability and the proper formulae for calculating damages. *See* BRIEF IN SUPPORT OF PLAINTIFFS' OPPOSED MOTION FOR SUMMARY JUDGMENT (Doc. No. 127 and Doc. No. 148-1) (Plaintiff's Brief).[1] Defendants Gurley Motor Co. (Gurley Motor) and Red Rock Investment Co. (Red Rock) oppose the motion. *See* DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 142) (Response). As described below, the Court will grant in part and deny in part Plaintiffs' motion.[2]

---

[1] Plaintiffs' filed a second copy of their Brief on February 26, 2016 because the first filing was a low-resolution reproduction that was difficult to read. The contents and pagination, however, remain the same on both copies.
[2] In reaching this decision, the Court also considered Plaintiffs' REPLY BRIEF IN SUPPORT OF PLAINTIFFS' OPPOSED MOTION FOR SUMMARY JUDGMENT (Doc. No. 149) (Reply).

**Background**

The following facts are undisputed. Defendant Gurley Motor is a licensed motor vehicle dealer located in Gallup, New Mexico that offers in-house financing to its customers. Plaintiff's Brief, Undisputed Material Facts (UMF) Nos. 3, 5. On or before June 16, 2013, Gurley Motor "developed a program of deferring a portion of the down payment which customers agreed to pay." Response at 3; UMF 14, 22. Customers who participated in this program signed a standardized Motor Vehicle Installment Loan Contract and Security Agreement (Loan Contract) agreeing to repay the deferred down payment in addition to the regular loan payments. UMF 13-14, 22. "Since at least June 16, 2013, in every car sale in which Gurley [Motor] agreed to accept a Deferred Down Payment from a customer, Gurley [Motor] disclosed the Deferred Down Payment as part of the Payment Schedule in the [Loan Contract], but failed to include the down payment in the Total of Payments." UMF 22. Plaintiffs maintain that this practice violated the mandatory disclosure provisions of the Truth in Lending Act of 1968 (TILA), 15 U.S.C. § 1601, *et seq*.

Defendant Red Rock acts as Gurley Motor's in-house financing company, with Gurley Motor assigning Loan Contracts to Red Rock. UMF 4; BRIEF IN SUPPORT OF PLAINTIFFS' OPPOSED MOTION FOR CLASS CERTIFICATION (Doc. No. 69 at 1). From June 16, 2013 to the present, Gurley Motor regularly assigned Loan Contracts to Red Rock, including every Loan Contract involving a deferred down payment. UMF 4, 23. Some of the borrowers, like Plaintiffs, defaulted on their payments and Red Rock repossessed their vehicles. Whenever it repossessed a vehicle, Red Rock sent out a standardized Notification Before Disposition of Collateral (Repossession Notice) before selling the vehicle. UMF 25-26. Red Rock did not provide any other written notice to consumers prior to the sale. UMF 27. According to Plaintiffs,

Red Rock's standardized Repossession Notice does not comply with the requirements of the New Mexico Uniform Commercial Code (UCC or New Mexico UCC), NMSA § 55-1-101, *et seq*.

On October 30, 2015, the Court certified two consumer protection classes:

(1) A "Loan Agreement Class" or "TILA Class" consisting of all natural persons who, beginning one year prior to the filing of the Complaint, entered into a Motor Vehicle Installment Loan Contract with Gurley to purchase a vehicle primarily for personal, family, or household use, where the loan agreement included a "deferred down payment," which was listed in the disclosed Payment Schedule but not included in the Total of Payments, and

(2) A "Notification Class" or "UCC Class" consisting of all natural persons who purchased a vehicle from Gurley primarily for personal, family, or household use, whose financing contract was assigned to Red Rock and to whom, beginning four years prior to the filing of the Complaint, Red Rock sent its Notification Before Disposition of Collateral, after repossessing the person's vehicle.

*See* MEMORANDUM OPINION AND ORDER (Doc. No. 87 at 20). Plaintiffs are the named class representatives for both classes.

## Standard of Review

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990).

The party seeking summary judgment bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (internal quotation marks omitted). Once the movant meets this burden, Rule 56 requires the non-moving party to designate specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "Where the facts are not in dispute . . . , summary disposition is appropriate." *Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007) (citing FED. R. CIV. P. 56(c)).

## Discussion

### A. TILA Class Claims

"Congress enacted TILA in 1968 'to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit.'" *Sanders v. Mt. Am. Fed. Credit Union*, 689 F.3d 1138 (10th Cir. 2012) (quoting 15 U.S.C. § 1601(a)). Relevant to this lawsuit, under TILA, in all closed consumer credit transactions, creditors must clearly and conspicuously disclose, among other things, (1) "the sum of the amount financed and the finance charge, which shall be termed the 'total of payments'" and (2) "the number, amount, and due dates or period of payments scheduled to repay the total of payments." 15 U.S.C. §§ 1632(a), 1638(a)(5-6). Disclosures of the "total of payments" and "schedule of payments" must be "in accordance with regulations of the Bureau." 15 U.S.C. § 1632(a).

#### 1. Gurley Motor's TILA Liability

To prevail on their TILA class claims against Gurley Motor, Plaintiffs must show that (1) Gurley Motor is a creditor within the meaning of the statute, (2) the Loan Contracts qualify as

4

consumer credit transactions, and (3) the Loan Contracts do not include the required TILA disclosures. *See* 15 U.S.C. § 1602, 1638. Defendants do not deny that Gurley Motor is a creditor or that the Loan Contracts constitute closed consumer credit transactions governed by 15 U.S.C. § 1638. Consequently, the only issue before the Court is whether Gurley Motor contravened § 1638(a)(5) of TILA (as Plaintiffs maintain) when it decided to omit deferred down payments from the total of payments disclosure on its standardized Loan Contract form.

It is clear from the statute and the briefing that the answer to this question is "yes." TILA directs creditors to provide consumers with (1) a list of scheduled payments and (2) a separate disclosure of the "total of payments," which is "the sum of the amount financed and the finance charge." 15 U.S.C. § 1638(a)(5). In other words, within the loan documents, creditors must list the required payments along with their sum – the "total of payments." *See* 15 U.S.C. § 1638(a)(6) (describing the schedule of payments as a list of the individual payments needed "to repay the total of payments"). The mandatory regulations make these requirements quite clear: "the creditor shall disclose" the payment schedule and "[t]he total of payments, using that term, and a descriptive explanation such as 'the amount you will have paid when you have made all scheduled payments.'" 12 C.F.R. § 1026.18(h). The official comments to this regulation even address how to handle deferred down payments:

> The total of payments is the sum of the payments disclosed under [the payment schedule]. For example, if the creditor disclosed a deferred portion of the downpayment as part of the payment schedule, that payment must be reflected in the total disclosed under this paragraph.

Official Staff Interpretations of Regulation Z, 12 C.F.R. Part 226, Supplement I § 226.18.[3] It is undisputed that Gurley Motor failed to comply with these directives. *See* Response at 4

---

[3] A copy of the Official Staff Interpretations is available online at: http://www.ecfr.gov/cgi-bin/text-idx?SID=862e04ec3ec2ec79ffa41fc44e980871&mc=true&node=ap12.3.226_159.1&rgn=div9.

(conceding that Gurley Motor's disclosure practices constituted a "hyper-technical" violation of the mandatory TILA regulations). Gurley Motor listed deferred down payments as scheduled payments without including these amounts in the total of payments, with the result that the loan appeared cheaper than it really was.

Despite these facts, Defendants argue that they should not be held liable for Gurley Motor's inaccurate disclosure of the total of payments because Gurley Motor was attempting to help customers by offering interest-free deferred down payments and its failure to abide by TILA was inconsequential and harmless. Response at 3-5. To the extent Defendants are arguing that the Court can excuse Gurley Motor's TILA violation on the basis that Gurley Motor had good intentions and did not cause any harm to its customers, they have not cited to any case law to support such a result. Moreover, these requests are contrary to the statute's purpose as well as its language. Congress passed TILA to promote the use of standardized credit terms that consumers can more easily compare and understand. *Rosenfield v. HSBC Bank, USA*, 681 F.3d 1172, 1179-1180 (10th Cir. 2012). In accordance with this remedial purpose, TILA allows a plaintiff to recover statutory damages in the absence of actual harm. 15 U.S.C. § 1640. Additionally, while it contains a safe harbor provision for bona fide errors, *id.*, this provision is limited and Defendants' have not invoked its protections.

The thrust of Defendants' argument is that the Court should refrain from imposing liability on Defendants because the TILA violation at issue – failing to properly calculate the total of payments, separate from the schedule of payments – is trivial or as Defendants put it "hyper-technical." Response at 5. Defendants appear to be advocating for the position that partial compliance with TILA is sufficient as long as a court finds that any violations are undamaging or trifling. But even the cases cited by Defendants fall short of advancing such a lenient rule. For

example, in *Smith v. Chapman*, 614 F.2d 968 (5th Cir. 1980), the Fifth Circuit explained that "the applicable standard is strict compliance with the technical requirements of [TILA]." *Id.* at 971. While it opined that this did not "necessarily mean punctilious compliance if, with minor deviations from the language described in the Act, there is still a substantial, clear disclosure of the fact or information demanded by the applicable statute or regulation," the Fifth Circuit stressed that creditors are required to make disclosures "in the proper technical form and in the proper locations" as mandated by TILA and its accompanying regulations. *Id.* at 971-972. In other words, disclosure need not be perfect, but they must include all of the information required under the statute and regulations, even if a creditor feels this information is unimportant. *See Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 567-568 (1980) (warning that courts ought to refrain from "interstitial lawmaking" and treat "administrative rulemaking and interpretation under TILA as authoritative"); *Santos-Rodriguez v. Doral Mortg. Corp.*, 485 F.3d 12, 16 (1st Cir. 2007) (TILA requires "clear and conspicuous" notice, not perfect notice).

Gurley Motor's disclosure practices are actionable under these standards. The failure to include the deferred down payment in the total of payments was not a minor imperfection in the wording of the required disclosures. It was a purposeful, if unwitting, decision to understate a clearly required piece of information – the total sum of the payments the debtor would have to make. Defendants attempt to obfuscate this fact by focusing on the schedule of payments requirement and pointing out that the deferred down payments were identified on the Loan Contract, so consumers could properly calculate the amount owed. The problem with this argument is that Congress made a policy judgment that creditors should tell consumers both the number and amount of payments (the payment schedule) and the total amount that has to be paid, so that borrowers (1) know when payments are due and (2) have no confusion about the total

cost of the loan, which is listed conspicuously for them. By understating the total of payments, Gurley Motor violated the second requirement. The Court will enter summary judgment on liability in favor of Plaintiffs and the TILA class members against Defendant Gurley Motor.

### 2. Red Rock's TILA Liability

Under TILA, an assignee of a deficient consumer loan contract bears the same liability as the creditor for any TILA violations that are "apparent on the face of the disclosure statement." 15 U.S.C. § 1641(a). TILA specifies that this includes all invalid disclosures (1) "which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) . . . which does not use the terms required to be used by [TILA]." *Id.* Plaintiffs argues that Red Rock, the assignee of the class members' Loan Contracts, is liable for Gurley Motor's disclosure violations under this standard. Defendants take the position that Plaintiffs are not entitled to summary judgment on this issue because Gurley Motor's TILA violations "are by no means apparent to a reasonable person, particularly taken in the context of the relative lack of sophistication of [Red Rock,] [an] eight employee, family-owned, small town business." Response at 8.

Defendants' statement of the law belies its own argument. According to Defendants, "in considering a claim of assignee liability, the relevant inquiry is whether a reasonable person can spot any violations on the face of the disclosure statement or other assigned documents." Response at 7 (internal citations omitted). In other words, the standard is objective. Here, the TILA violations – routinely uncalculating the total of payments – are discernible from the face of the Loan Contracts. Contrary to Defendants' assertions, it does not require a high degree of sophistication to read TILA, conclude that a loan contract must disclose the sum of the schedule of payments – the total of payments – and check loan contracts to ensure that this was done.

Even if Red Rock somehow misconstrued TILA's mandate, ignorance of the law is not a defense. *See United States v. Reed*, 114 F.3d 1053, 1057 (10th Cir. 1997) ("an 'ignorance of the law' defense [is] a defense which is easily rejected"); *Gilbert v. Storage Tech. Corp.*, No. 95-1060, 1996 U.S. App. LEXIS 26656, at *13 (10th Cir. Oct. 11, 1996) (ignorance of the law is not a defense to unmet ADA and ADEA obligations). Because Red Rock could have discovered the TILA violation by reviewing the four corners of the Loan Contracts, without any additional investigation into Gurley Motor's lending practices, Red Rock is liable for Gurley Motor's TILA violation. The Court will enter summary judgment on the issue of TILA liability in favor of Plaintiffs and the TILA class against Defendant Red Rock.

### 3. TILA Damages

Plaintiffs maintain that TILA § 1640 provides a "straightforward formula[] for the calculation of statutory damages" and that the Court should find "Defendants to be liable for damages in the amounts of th[is] statutory damages formula[]." Plaintiff's Brief at 12-13. Defendants do not respond to this request. Nevertheless, the Court will deny Plaintiff's motion for summary judgment on the appropriate amount of TILA damages. Plaintiffs have not identified and TILA does not contain a fixed formula for determining statutory damages in class action lawsuits. Congress has tasked courts with determining and awarding the appropriate amount of TILA statutory class damages according to the following three rules:

(1) "as to each member of the class no minimum recovery shall be applicable;"

(2) "the total recovery" for the class "shall not be more than the lesser of $ 1,000,000 or 1 per centum of the net worth of the creditor;" and

(3) "[i]n determining the amount of award . . ., the court [must] consider, among other relevant factors, the amount of any actual damages awarded, the frequency and

persistence of failures of compliance by the creditor, the resources of the creditor, the number of persons adversely affected, and the extent to which the creditor's failure of compliance was intentional."

15 U.S.C. § 1640. As long as the court abides by these rules, damages may be limited to "such amount as the court may allow." *Id.* § 1640(a)(2)(B).[4] Here, neither party has presented any evidence or argument regarding damages factors. Thus, the Court will deny Plaintiffs' motion for summary judgment on the issue of TILA damages as premature. The Court will determine the appropriate amount of TILA damages after the filing of a properly presented motion for summary judgment, or if the relevant facts are contested, at the bench trial.

### B. UCC Class Claims

#### 1. Liability

On behalf of themselves and other similarly situated class members, Plaintiffs bring claims against Defendant Red Rock, under §§ 55-9-611, 55-9-614, and 55-9-623 of the New Mexico UCC, challenging Red Rock's allegedly illegal repossession practices. When a secured party repossesses collateral, the UCC requires this party to send the debtor "a reasonable authenticated notification of disposition." NMSA § 55-9-611(b). In consumer goods transactions, like the automotive sales that form the basis of this class lawsuit, the notification must include eight pieces of information: (1) the identity of the debtor and the secured party, (2) a description of the collateral that is the subject of the intended disposition, (3) the method of intended disposition, (4) a statement that the debtor is entitled to an accounting of the unpaid indebtedness, with information about the charge, if any, for an accounting, (5) the time and place of a public disposition or the time after which any other disposition is to be made, (6) a

---

[4] In an individual action, by comparison, TILA sets forth clear formulae for calculating statutory damages. *See* 15 U.S.C. § 1640(a)(2)(A). But these rules do not, by their own terms, govern class actions.

description of any liability for a deficiency of the person to which the notification is sent, (7) a telephone number from which the amount that must be paid to the secured party to redeem the collateral is available, and (8) a telephone number or mailing address from which additional information concerning the disposition and the obligation secured is available. NMSA § 55-9-614. While this information need not be phrased in a particular manner, *id.*, a notification omitting the above information is "insufficient as a matter of law." Official Comment No. 2 to NMSA § 55-9-614.

Plaintiffs contend that Red Rock neglected to include five of the eight required pieces of information in its repossession notices:

(1) Red Rock failed to state whether the disposition of the vehicle would be through public or private sale;

(2) Red Rock failed to state that the debtor was entitled to an accounting of the unpaid indebtedness;

(3) Red Rock failed to describe the customer's liability for a deficiency;

(4) Red Rock failed to state a telephone number the customer can call to learn the amount needed to redeem the collateral; and

(5) Red Rock failed to provide a telephone number or mailing address from which additional information concerning the disposition and the obligation secured was available.

Plaintiffs' Brief at 12. In other words, as listed above, Red Rock failed to satisfy the third, fourth, sixth, seventh, and eighth, disclosure requirements. In addition, Plaintiffs argue that Red Rock's repossession notice "misstated and unfairly limited the consumer's right to redeem up to the actual time of sale" in violation of NMSA § 55-9-623, which allows a debtor, who has not

otherwise reached an agreement with a secured party, to redeem tangible collateral until the time of disposition (whether through a contract or sale).

Defendants do not address Plaintiffs' alleged deficiencies in a coherent and organized manner. Instead, they admit that the "specific notifications sent by Red Rock maybe facially deficient," but argue that the Court should not hold Red Rock liable for these clear statutory violations because "the entirety of the communications that Red Rock has with its customers . . . reasonably apprise[d] people whose cars had been repossessed of their rights and remedies under the UCC." Response at 9. The problem with this argument is immediately evident. The UCC requires that a secured party mail or otherwise send written notice directly to a consumer, so any oral communications Red Rock may have had with customers and any newspaper advertisements Red Rock may have published are immaterial to the validity of its form notification. *See* NMSA § 55-9-611; Official Comment No. 5 to NMSA § 55-9-611 (specifying that the notification must be "authenticated," which excludes oral notifications). Here, it is undisputed that Red Rock did not send any written materials to debtors other than the challenged form Repossession Notice. Thus, the legality of Red Rock's notification procedures depends exclusively on the contents of the Repossession Notice.

Some of Defendants' contentions could be construed as arguments that Red Rock's written Repossession Notice satisfied the various UCC requirements of its own accord. For example, Defendants point out that Red Rock's address appeared in the letterhead of the Repossession Notice. Defendants assert that the Repossession Notice, which explained that the repossessed vehicle would be sold at a "repo" sale, "clearly describe[d] the vehicles being sold at a public sale." Response at 9. Finally, Defendants correctly point out that the Repossession Notice "inform[ed] the customer that he or she could be liable for any deficiency." *Id.* This

information arguably satisfied the requirements that Red Rock provide a phone number or address for acquiring further information (NMSA § 55-9-614(1)(D)), list the method of intended disposition (NMSA § 55-9-613(1)(C)), and warn debtors of the potential liability for a deficiency judgment (NMSA § 55-9-614(1)(B)). Plaintiffs, however, do not respond to these partially formed arguments. Fortunately, the Court need not address any potential dispute about the sufficiency of Red Rock's Repossession Notice with regard to the above requirements. Even if Plaintiffs' are incorrect about Red Rock's failure to meet these requirements, they remain entitled to summary judgment.

It is clear that Red Rock's form Repossession Notice violated the provisions of the New Mexico UCC in at least three regards: (1) it does not "state that the debtor is entitled to an accounting of the unpaid indebtedness and state[] the charge, if any, for an accounting" (NMSA § 55-9-613(1)(D)); (2) it does not contain a telephone number that the debtor can call to obtain the amount that must be paid to redeem the collateral (NMSA § 55-9-614(1)(C); and (3) it lists a redemption deadline of five days before the scheduled sale, thereby misleading debtors regarding their right to redeem any time before the sale (see NMSA § 55-9-623). *See* Repossession Notice, Exhibit 3 to Plaintiffs' Brief (Doc. No. 148-3).

Defendants ask the Court to overlook these violations, which they deem merely technical and harmless. But it is not this Court's job to second-guess the New Mexico legislature's judgment regarding the importance and necessity of mandated repossession disclosures. Defendants' self-serving arguments regarding the insignificance of its misconduct have no place in a case like this one where the New Mexico legislature has imposed strict consumer protection requirements on a business. Defendants want the Court to "consider a more expansive view of the notice provisions, and hold . . . that reasonableness [of a particular notice] should be analyzed

as a factual question dependent on the facts and circumstances of each case." Response at 10 (internal citation omitted). The statute forecloses taking this approach for consumer transactions. *Compare* NMSA § 55-9-613(2) *to* NMSA § 55-9-614; *see also* Official Comment No. 2 to NMSA § 55-9-614. Therefore, the Court will enter summary judgment on liability in favor of the UCC class against Defendant Red Rock.

### 2. UCC Class Damages

Even where a consumer-goods debtor does not suffer actual damages, the UCC allows the debtor to recover statutory damages from a secured party that fails to comply with the repossession notice provisions of the UCC. NMSA § 55-9-625(c)(2). In such cases, the debtor, who acts as a private attorney general, is entitled to "an amount not less than the credit service charge plus ten percent of the principal amount of the obligation or the time-price differential plus ten percent of the cash price." *Id.* Here, Plaintiffs have elected to seek damages in the amount of "the credit service charge plus ten percent of the principal amount of the obligation" on behalf of themselves and all UCC class members. Plaintiffs interpret the word "principal" in this formulation as the original principal associated with the secured transaction. Defendants, on the other hand, claim that the principal must be calculated as of the date of the UCC violation – here the date the Repossession Notice was sent.

No New Mexico appellate court has offered any guidance that would directly resolve this dispute. Thus, it falls to this Court to make an educated guess regarding how the New Mexico Supreme Court would interpret the word "principal." *See Pehle v. Farm Bureau Life Ins. Co.*, 397 F.3d 897, 901-902 (10th Cir. 2005) (in the absence of binding precedent, federal courts sitting in diversity must predict state law based on all the resources available). Here, viewed in

isolation, either reading is a plausible interpretation of the word "principal."[5] However, for the following four reasons, the Court finds it highly likely that the New Mexico Supreme Court would adopt Plaintiffs' proposal and allow debtors to collect as damages the finance charge plus the ten percent of the original principal associated with a secured transaction.

First, Plaintiffs have cited multiple cases from other jurisdictions interpreting the UCC in this manner. *See* Reply at 11-12 (citing *Muro v. Hermanos Auto Wholesalers, Inc.*, 514 F. Supp. 2d 1343, 1352 (S.D. Fla. 2007), *In re Schwalb*, 347 B.R. 726, 755-756 (Bankr. D. Nev. 2006), *Davenport v. Chrysler Credit Corp.*, 818 S.W.2d 23, 32 (Tenn. Ct. App. 1991), *Garza v. Brazos County Federal Credit Union*, 603 S.W.2d 298, 300-301 (Tex. Civ. App. Waco 1980)). Defendants, however, have only identified one contrary authority. *See* Response at 11 (citing *Limtiaco v. AUCTION CARS.COM, LLC*, No. 2:11-cv-00370-MMD-PAL, 2012 U.S. Dist. LEXIS 148474 (D. Nev. Oct. 15, 2012)). Nor did the Court find any other case law supporting Defendants' position. Thus, the weight of authority appears to hold that "principal" means the original amount of the principal obligation.

Second, the White and Summer's UCC treatise supports Plaintiffs' position:

> [Under the UCC, statutory] damages are "not less than" the credit service charge plus 10% of the principal amount of the obligation or the time-price differential plus 10% of the cash price. We interpret that sentence to grant damages equal to the total interest charge (irrespective of the amount that has been paid) in addition to 10% of the original principal amount of the debt, irrespective of how much of the principal has been repaid.

WS-UCC § 34:43, 4 White, Summers, & Hillman, Uniform Commercial Code § 34:43 (6th ed.). New Mexico courts regularly rely on White and Summers to interpret the UCC and have even referred to them as "recognized Code authorities." *Bowlin's, Inc. v. Ramsey Oil Co.*, 1983-NMCA-038, ¶ 21, 99 N.M. 660, 668; *see also Gardner Zemke Co. v. Dunham Bush, Inc.*, 1993-

---

[5] Statute does not define the term "principal amount," but explicitly leaves its construction to the courts. Official Comment No. 4 to NMSA § 55-9-625.

NMSC-016, ¶ 10, 115 N.M. 260, 263 (citing White and Summer as persuasive authority); *Kuemmerle v. United N.M. Bank at Roswell, N.A.*, 1992-NMSC-028, ¶ 12, 113 N.M. 677 (same).

Third, Plaintiffs' proposed interpretation of the word "principal" results in a more logical reading of the statute. The UCC provides two alternative formulae for calculating statutory damages: (1) the credit service charge plus ten percent of the principal or (2) the time-price differential plus ten percent of the cash price. These formulae are clearly different attempts to measure roughly the same thing; the cost of obtaining financing plus ten percent of the original cost of the collateral. The parallel formulae and the use of the term "cash price" clarify that "principal" means the original principal at the time the obligation was incurred.

Fourth, and finally, Defendants' reading of the statute would result in a perverse outcome: the closer an individual came to repaying a secured obligation and the more equity the person possessed in the collateral, the less protections this individual would enjoy with regard to faulty repossession notifications. This is not a logical result and would, in extreme cases, effectively violate the purpose of the statutory damages provision – ensuring that consumers receive a minimum recovery for UCC violations. *See* Official Comment No. 4 to NMSA § 55-9-25.

For all of these reasons, the Court will adopt Plaintiffs' interpretation of the statute. Because Defendants have not lodged any other objection to the entry of summary judgment on the issue of damages, the Court will grant Plaintiffs' request and rule that each UCC class member is entitled to damages in an amount equal to the credit service charge plus ten percent of the original principal amount of the car loan.

The Court notes that Defendants originally objected to the certification of the UCC class on due process grounds, arguing that imposition of aggregated class damages would result in

unfair and outrageous punishment far outweighing the violation. *See* DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION (Doc. No. 74 at 13). In rejecting this argument, the Court explained that "[i]f class damages expand to unconstitutional levels through the aggregation of class claims, Defendants can file and the Court can consider a due process motion to restrict the amount of damages." MEMORANDUM OPINION AND ORDER (Doc. No. 87 at 15). In their response to the motion for summary judgment, Defendants continue to complain about what they perceive as the unfairness of being held liable for UCC statutory violations. However, Defendants do not raise a due process challenge, perhaps because, at the time of briefing, the opt-out period was still open and the class membership list had not been closed. Because the size of the class has not yet been determined, the Court does not construe Defendant's silence as a waiver of their due process argument. Thus, the Court enters summary judgment on the UCC damages formula with the caveat that the Court will, if requested, entertain a due process motion at the appropriate time (although the Court hopes that the parties will reach a resolution of this matter without the need for further litigation).

IT IS THEREFORE ORDERED THAT:

1. PLAINTIFFS' OPPOSED MOTION FOR SUMMARY JUDGMENT (Doc. No. 126) is granted in part and denied in part.

2. By separate order, the Court will enter summary judgment as to liability in Plaintffs' favor against Defendants on the claims of both the TILA and UCC classes.

3. Barring a due process reduction, the Court finds that each UCC class member is entitled to statutory damages in the amount of the credit service charge plus ten percent of the original principal amount of the car loan.

_____
SENIOR UNITED STATES DISTRICT JUDGE