IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

EUGENE YAZZIE and
PHYLLIS YAZZIE,
on behalf of themselves
and all others similarly situated,

        Plaintiffs,

v.                                                                    No. 1:14-cv-00555-JAP-SCY

GURLEY MOTOR CO. and
RED ROCK INVESTMENT CO.,

        Defendants.

**PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT**

## I.  Introduction

The parties have reached agreement on the settlement of this class action.  The proposed Settlement Agreement includes a settlement fund of $940,200, comprising $695,000 cash and $245,200 in the form of gift certificates, plus debt relief for class members worth $3,820,578. *See* Exhibit 1 (Class Action Settlement Agreement).[1]  Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement Agreement and direct that notice of settlement be provided to class members in the form proposed by Plaintiffs.[2] Plaintiffs will submit a proposed form of order providing for preliminary approval.

Defendants concur in this Motion for Preliminary Approval.  The parties agree that the proposed Settlement Agreement is fair, reasonable, adequate, and worthy of preliminary approval.

---

[1] The parties have agreed upon the Settlement Agreement shown in Exhibit 1, but have not yet fully executed it. The parties will submit an executed Settlement Agreement as soon as it becomes available.
[2] Plaintiff is filing a Motion to Approve Class Notice contemporaneously with this motion.

## II.   Statement Of The Case

The background of the claims in this case is stated in detail in the briefing and order concerning Plaintiffs' Motion for Class Certification [Docs. 69, 74, 77, and 87], and Plaintiffs' Motion for Summary Judgment [Docs. 142, 148, 149, and 153].

In summary, in their Amended Complaint [Doc. 21], Plaintiffs alleged that Defendant Gurley Motor Co.'s standard form contracts improperly disclosed a "deferred down payment" in violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*  Plaintiffs alleged that Defendant Red Rock Finance Co. is liable for Gurley's TILA violations as the assignee of its contracts.  Plaintiffs also alleged that when Red Rock repossessed vehicles, it used an improper notice, in violation of the New Mexico Uniform Commercial Code ("UCC"), N.M.S.A. 1978 § 55-1-101 *et seq.*

Plaintiff moved for class certification on August 21, 2015 [Doc. 68 and 69].  The motion was fully briefed, and on October 30, 2015 [Doc. 87], the Court certified the following two classes:

1.      A "Loan Agreement Class" or "TILA Class" consisting of all natural persons who, beginning one year prior to the filing of the Complaint, entered into a Motor Vehicle Installment Loan Contract with Gurley to purchase a vehicle primarily for personal, family, or household use, where the loan agreement included a "deferred down payment," which was listed in the disclosed Payment Schedule but not included in the Total of Payment, and

2.      A "Notification Class" or "UCC Class" consisting of all natural persons which purchased a vehicle from Gurley primarily for personal, family, or household use, whose financing contract was assigned to Red Rock and to whom, beginning four years prior to

the filing of the Complaint, Red Rock sent its Notification Before Disposition of Collateral, after repossessing the person's vehicle.

On January 6, 2016, Plaintiffs moved for summary judgment [Docs. 126 and 148].  The matter was fully briefed, and on March 8, 2016, the Court granted in part and denied in part the motion [Doc. 153].  The Court ruled that Defendants were liable for the claims of the TILA and UCC classes and ruled on the formula to be used in determining damages for violations of the UCC.  The Court did not grant summary judgment on the measure of damages for TILA violations.

Following extensive formal and informal settlement discussions, on April 29, 2016, the parties engaged in a second mediation of this case before United States Magistrate Judge Steven Yarbrough, and reached settlement [Doc. 179].

**III.    The Terms Of The Settlement**

The material terms of the parties' Settlement Agreement are as follows.

**A.    Relief to Class Members**

The Settlement Agreement provides for a total fund of $940,200 ("Settlement Fund"), comprising a $695,000 cash fund plus $245,200 in gift certificates.

It is expected that, after payment of attorney fees and litigation costs, as well as a modest service award to Plaintiffs and costs of notice and administration, more than $500,000 of the cash portion of the Settlement Fund will be available to pay to class members.  Members of the TILA Class will each receive a payment of $135, representing virtually complete recovery of that class's potential damages.  Members of the UCC class will receive pro rata payments of the remainder of the Settlement Fund, in varying amounts depending on each member's UCC damages.  As part of the Settlement Agreement, Defendants waive any claim that class members

did not purchase their vehicles for personal, family, or household use, so all persons identified as members of the classes will recover and be otherwise bound by the Settlement Agreement. Given the recent nature of the transactions and the reliable information in Defendants' records concerning class members' addresses, it is expected that virtually all of these amounts will be paid to class members.  With the Court's approval, if uncashed amounts of the settlement cannot practicably and economically be distributed to class members, the amount of any uncashed checks will be used to create a *cy pres* award to Equal Access to Justice, a 501(c)(3) organization that funds legal aid organizations that provide assistance to low and moderate income persons in New Mexico, including the Navajo Nation.

In addition to cash relief, each class member will receive a gift certificate in the amount of $200.  The gift certificate will be valid for up to three years, and may be used at Gurley Motor Co. for vehicle purchases, service, or parts.  The class consists of individuals who purchased vehicles from Gurley, the vast majority of whom are members of the Navajo Nation.  Class members therefore can be expected to reside in the general vicinity of Gurley, where the certificates may be used.  Because vehicle ownership is so common in this area, the parties believe that all class members will find the gift certificates to be of value.

In addition to the cash relief and gift certificates making up the Settlement Fund, Defendants have agreed to waive any amounts allegedly owed to them by a UCC Class member. In many cases, Defendants allege that class members may continue to owe Defendants money as a result of defaulted vehicle loan contracts.  This Settlement Agreement would eliminate all such debt.  The value of debt relief under this Settlement Agreement is $3,820,578.  This substantial debt forgiveness provides a major benefit to class members.

Finally, Defendants have agreed to delete any derogatory credit reporting relating to UCC Class members.  As with debt relief, the deletion of adverse credit reporting is a major benefit to class members who may need to obtain credit in the future.

The Settlement Agreement does not require class members to submit claims or to take any affirmative steps to receive the benefits of the settlement.

### B.      Right to Object.

Plaintiffs' proposed notice explains class members' right to object to the proposed Settlement Agreement.  Fed.R.Civ.P. 23(e)(5).  Plaintiffs request that class members who wish to object be ordered to do so with a writing postmarked on a date selected by the Court, but at least 14 days prior to the Fairness Hearing.

### C.      Attorneys' Fees and Service Award to Class Representative.

Class Counsel will submit a request for approval of attorneys' fees in the amount of 25% of the cash portion of the Settlement Fund, or $173,750.[3]  This amount is inclusive of gross receipts tax and all costs, including costs of administration.  The amount approved by the Court shall be paid from the Settlement Fund.  Class Counsel also will apply to the Court for a $4,000 incentive award for each Plaintiff, for a total of $8,000.  Mr. and Mrs. Yazzie actively participated in the litigation, including review of pleadings, extensive contact with class counsel, and two 400-mile round trip visits to Albuquerque to attend the settlement conferences.  These trips imposed a significant burden on Plaintiffs' extremely limited resources.

---

[3] Plaintiffs do not request that the Court approve this amount at the present time.  Plaintiffs will submit their request for attorneys' fees along with their motion for final approval.

**IV.     The Settlement Should Be Preliminarily Approved As Fair, Reasonable And Adequate.**

The Settlement Agreement presented to the Court for preliminary approval represents a fair and reasonable resolution of this dispute, and is worthy of notice to and consideration by the Class Members.  It will provide financial relief to class members and will relieve Defendants of the burden of litigation.  In order to begin the approval process, Plaintiffs request that the Court enter an order preliminarily approving the Settlement Agreement and scheduling the Final Approval Hearing.

**A.     The Standard For Preliminary Approval Of Settlement Agreements**

Federal Rule of Civil Procedure 23(e) requires court approval of a class action settlement. *The Manual For Complex Litig*. (Fourth), § 21.632 (2004), sets forth the procedures for preliminary approval of settlements: If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

Courts generally favor settlements of class actions. "There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for Court approval."  H. Newberg, A. Conte, *Newberg on Class Actions* (4th ed. 2002), §11.41.  At the preliminary approval stage, the question for this Court is whether the settlement falls well within the "range of possible approval," and is sufficiently fair, reasonable and adequate to warrant dissemination of notice apprising class

members of the proposed settlement and to establish procedures for a final settlement hearing

under Rule 23(e). *Id.* Consideration of the relevant factors indicates that the proposed Settlement

Agreement in this case is in the range of possible approval and supports authorizing

dissemination of notice of the settlement to class members.

The initial presumption of fairness of a class settlement may be established by showing,

(1) That the settlement has been arrived at by arm's-length bargaining; (2) That sufficient

discovery has been taken or investigation completed to enable counsel and the court to act

intelligently; and (3) That the proponents of the settlement are counsel experienced in similar

litigation.  These factors are each discussed in turn below.  Newberg, at §11.41. In determining

whether class action settlements should be approved, "[c]ourts judge the fairness of a proposed

compromise by weighing the plaintiff's likelihood of success on the merits against the amount

and form of the relief offered in the settlement. [Citation omitted] . . . They do not decide the

merits of the case or resolve unsettled legal questions."  *Carson v. American Brands, Inc*., 450

U.S. 79, 88 n.14 (1981).

### B.    The Parties' Negotiations

The parties, through counsel and with the assistance of Magistrate Judge Steven

Yarbrough, have conducted arms' length negotiations to resolve this matter.  After conducting

depositions and written discovery into the merits and analyzing the maximum recoverable

damages, the parties agreed to discuss a compromise of claims.  Multiple settlement

conferences and exchanges of settlement offers between counsel over the course of several

months finally yielded an agreement to settle the case.  The parties first reached a settlement in

principle, with the detailed terms of the settlement to be further negotiated and agreed upon.

The parties then reached the terms in the Settlement Agreement now before the Court, and also

agreement on the content of the notice and nature of the claims procedure.  Both parties were represented by experienced attorneys.

### C.     The Court Should Approve Preliminarily the Proposed Settlement

#### 1.     The Settlement Provides Significant Benefits to the Class

Given the nature of Plaintiff's claims and the potential recovery, the economic relief provided for under the Settlement, which consists of a payment of $695,000 plus $245,200 in the form of gift certificates, plus $3,820,578 in debt forgiveness, demonstrates that the proposed Settlement Agreement is fair, reasonable, and appropriate.

Members of the TILA Class have potential claims under the Truth in Lending Act.  The TILA by its terms limits statutory damages in a class action. 15 U.S.C. § 1640.  The Settlement Agreement, calling for payment to the TILA class of $42,390, provides virtually complete relief to the TILA class.

Members of the UCC Class have potential claims under the Uniform Commercial Code. The UCC provides for statutory damages in the amount of the finance charge plus 10% of the principal on the loan.  Defendants' total liability pursuant to the UCC could reach to nearly $7,000,000.  However, as the Court has suggested [Doc. 153] and Defendant has argued in its Due Process Motion Regarding Class Action Damages [Doc. 177], this amount may be subject to challenge under the due process clause.  In addition, based on extensive discovery into Defendants' finances, Plaintiffs believe that a full award of UCC damages may be considerably beyond the ability of Defendants to pay.  For this reason, Plaintiffs believe that a compromise of Plaintiffs' UCC claims is appropriate.  That said, the total amount paid to members of the UCC class will be in the range of half a million dollars, not including gift certificates.  This represents a significant recovery, including an average of more than $500 cash per UCC class member.

In addition to cash, under Plaintiffs' plan of distribution, each class member will receive a $200 gift certificate, for a total of $245,200.  As noted *supra*, these gift certificates are of real value to class members.  Additional non-monetary relief in the form of debt forgiveness and credit repair provide additional substantial benefits to class members.

### 2. Voluntary Settlement Of This Class Action Serves The Interests Of The Parties, The Court, And New Mexico Borrowers

There is an overriding public interest in settling class action litigation.  "By their very nature, because of the uncertainties of outcome, difficulties of proof, and length of litigation, class action suits lend themselves readily to compromise." Newberg, §11.41.  Settlement of this particular case is appropriate because although Plaintiffs believe they are entitled to a considerable award, Plaintiffs understands that recovery of the full amount for class members is by no means assured, and this Settlement Agreement would resolve the conflicts underlying the class action without the necessity, time and expense of ongoing discovery and trial.  The value of the benefits class members will receive under this Settlement is enhanced by the fact that the benefits will be provided now, without the delay, burden and risks of further litigation.

### 3. The Factual Record Was Well Developed

Prior to settling, Plaintiffs submitted and reviewed Defendants' responses (including multiple supplemental responses) to nine sets of written discovery.  Plaintiffs conducted a deposition of three 30(b)(6) representatives of the Defendants concerning their business practices and financial circumstances.  Plaintiffs consulted with a CPA on Defendants' financial condition, and met with Defendants' CPA.  Plaintiffs prepared and fully briefed motions for class certification and for summary judgment.  The parties engaged in a series of discussions, and attended two settlement conferences, leading ultimately to settlement of this case.

### 4.     The Proposed Notice To Class Members Is Adequate.

Under Federal Rule of Civil Procedure 23(c)(2), class members are entitled to notice of any proposed settlement and an opportunity to object before it is finally approved by the Court. *Manual for Complex Litig.* (Fourth), § 21.31 (2004).  Notice is adequate if it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174 (1974), *quoting, Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).  The Notice the parties propose in Plaintiff's contemporaneously filed motion is clear and straightforward, providing putative class members with enough information to evaluate whether to participate in the settlement, as well as directions on how to seek further information. Notice will be sent by first class mail.  Plaintiffs expect to use two companies as settlement administrators, to minimize cost.  The first company will mail the class notice of settlement and, where necessary, update addresses through the use of computerized locator services before notice is mailed to class members. The Notice will be mailed to the last known/updated address of all class members by first class mail and marked address correction requested. Any Notices returned with a forwarding address will be promptly re-mailed to the forwarding address.  This proposed method of providing notice is adequate under Rule 23(c)(2). *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811 (1985) (individual mailed notice which clearly describes the case and class members' rights meets due process requirements).  The second class administrator has the capacity to issue checks in appropriate amounts and mail gift certificates to the numerous class members.

## V.      Scheduling Matters

Should the Court grant preliminary approval, the parties request that the Fairness Hearing

be set for a date not less than 90 days after preliminary approval.  The Court should allow

Plaintiff 30 days to mail notice.  Class members should be allowed 60 days to object.  This will

allow the parties to mail notice to class members and for class members to object if desired.  The

deadline for objections should be not less than 14 days prior to the Fairness Hearing.  This

schedule will also allow the parties to mail notice to state and federal Attorneys General as

required by the Class Action Fairness Act, 28 U.S.C. § 1715.

## VI.     Conclusion

The proposed Settlement Agreement was negotiated at arms-length and is presumptively

fair, reasonable, and adequate.  For the foregoing reasons, Plaintiffs respectfully request that this

Court approve the Settlement Agreement on a preliminary basis, so that Notice may be sent, and

that the Court schedule a hearing for final approval of the settlement and set appropriate

deadlines for various settlement requirements.

Respectfully Submitted,

*/s/Nicholas Mattison*
Nicholas Mattison
Richard N. Feferman
Feferman & Warren, Attorneys for Plaintiff
300 Central Ave., SW, Suite 2000 West
Albuquerque, NM 87102
(505) 243-7773

Approved:

*/s/Mark D. Jarmie*
Mark D. Jarmie
Jarmie and Associates, Attorney for Defendants
PO Box 26416
Albuquerque, NM 87125-6416
(505)243-6727

**CERTIFICATE OF SERVICE**

I hereby certify that on June 1, 2016, I filed the foregoing pleading electronically through the Courts's CM/ECF File System, which caused all parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Mark D Jarmie:                    mjarmie@jarmielaw.com

*/s/ Nicholas Mattison*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

EUGENE YAZZIE and
PHYLLIS YAZZIE,
on behalf of themselves
and all others similarly situated,

        Plaintiffs,

v.                              No. 1:14-cv-00555-JAP-SCY

GURLEY MOTOR CO. and
RED ROCK INVESTMENT CO.,

        Defendants.

## CLASS ACTION SETTLEMENT AGREEMENT

1.    **Parties.**  The parties to this Settlement Agreement are: Plaintiffs Eugene and Phyllis Yazzie, individually and on behalf of two classes of persons, and Defendants Gurley Motor Co. and Red Rock Investment Co.  This Agreement binds the Defendants, their assigns and successors, officers and employees, and all others acting on behalf of Defendants.  This Agreement also binds Plaintiffs and all members of the classes defined herein, and their successors and heirs.

2.    **Nature of Litigation.**  On June 16, 2014, Plaintiffs filed a class action in this Court, Case No. 1:14-cv-00555-JAP-SCY, alleging that Defendants violated the Truth in Lending Act and the New Mexico Uniform Commercial Code.

3.    **Denial of Liability.**  Defendants deny any wrongdoing.  Defendants consider it desirable that the action and the claims therein be settled upon the terms and conditions set forth in this Settlement Agreement, in order to avoid further expense and burdensome, protracted litigation.

4.    **Investigation.**  Counsel for the classes has investigated the facts available and the

Exhibit 1

applicable law.  Counsel for the classes has taken the depositions of Defendants, reviewed voluminous written discovery responses and documents from Defendants, including regarding Defendants' financial circumstances.  Defendants warrant that, to the best of their knowledge, their testimony and records are truthful, accurate, and contain no significant omissions.  Defendants acknowledge that Plaintiffs and class counsel have relied on this information in agreeing to this Settlement Agreement.

5.  **Compromise.**  Plaintiffs and the class members desire to settle their claims against Defendants, having taken into account, through their counsel, the risks, delay and difficulties involved in further litigation.  Based on the foregoing, and upon an analysis of the benefits which this Settlement Agreement affords the classes, Plaintiffs consider it to be in the best interest of the classes to enter into this Settlement Agreement.

6.  In consideration of the foregoing and other good and valuable consideration, the parties agree that the claims of the Plaintiffs and the members of the classes should be and are compromised and settled, subject to the approval of the Court, upon the following terms and conditions.

## TERMS OF SETTLEMENT

1.  **Effective Date.**  This Settlement Agreement shall become effective ("Effective Date") upon the Court's entry of a final Order (1) approving this Settlement Agreement as fair, reasonable and adequate to the classes; and (2) retaining jurisdiction to enforce the settlement, if necessary; provided, however, that the Order has become final, meaning that the time for appeal by an objector has expired, or, if there has been an appeal, that the Order has been upheld on appeal without material change.

2.  **Class Definition.**  The classes are defined as follows:

2

a.    "Loan Agreement Class" or "TILA Class" consisting of all natural persons who, beginning one year prior to the filing of the Complaint, entered into a Motor Vehicle Installment Loan Contract with Gurley to purchase a vehicle primarily for personal, family, or household use, where the loan agreement included a "deferred down payment," which was listed in the disclosed Payment Schedule but not included in the Total of Payment; and

b.    A "Notification Class" or "UCC Class" consisting of all natural persons who purchased a vehicle from Gurley primarily for personal, family, or household use, whose financing contract was assigned to Red Rock and to whom, beginning four years prior to the filing of the Complaint, Red Rock sent its Notification Before Disposition of Collateral, after repossessing the person's vehicle.

The parties note that as part of this Settlement Agreement, Defendants waive any claim that class members did not purchase their vehicles for personal, family, or household use.

3.   **Relief.**

a.    **Generally:** Full settlement is in the amount of $940,200, plus additional consideration as set forth herein.  Defendants shall pay a total of $695,000 in monetary relief, and $245,200 in the form of gift certificates to be distributed to the classes.  In the event of breach of this Settlement Agreement, each Defendant is jointly and severally liable for the full settlement amount.  This relief is all inclusive and reflects the entire agreement between the parties.  Plaintiffs and the classes shall not receive any additional amounts from the Defendants for any costs of administering this Settlement Agreement.  Plaintiffs are responsible for calculating and determining the distributions to the class members.

3

b.    **Monetary Relief:** Defendants shall pay a total amount of $695,000 to class counsel (or the class administrator, if so directed) within 15 days of the Effective Date. The money will be utilized as follows:

i.    **Payment of Class Attorney Fees and Costs.** Plaintiffs will submit an attorney fee application to the Court. Defendants will not oppose Plaintiffs' position that hourly billing rates of $195 for attorney Mattison and $325 for attorney Feferman are fair and reasonable and that class counsel are entitled to a percentage of the common fund to be determined. Plaintiffs' attorneys also will receive gross receipts tax and reimbursement of all taxable costs and all out-of-pocket expenses.

ii.    **Payment of Costs of Administration.** The plaintiffs will need to hire a third party settlement administrator to process notices and payments to class members.

iii.    **Service Award for Plaintiffs.** In recognition of the fact that Plaintiffs Eugene and Phyllis Yazzie were active in the litigation of this case, including multiple 400-mile round trips from Lower Greasewood, Arizona to Albuquerque, New Mexico, and regular contact and consultation with their attorneys, Mr. and Mrs. Yazzie will receive $4,000 each for their efforts, for a total of $8,000, subject to Court approval.

iv.    **Monetary relief to the class.** After payment of the above sums, the balance remaining from the total monetary settlement amount will be distributed as follows:

(1)     First, the members of the TILA Class will receive payments of $135.  Where more than one person was involved in a single transaction with Defendants triggering membership in the TILA Class (e.g., two co-buyers contracted to purchase a vehicle), a single payment of $135 will be made out to all persons involved in the transaction.  As such, there will be a total of 318 payments of $135, for a total of $42,390.

(2)     Second, all remaining funds will be divided among the members of the UCC Class.  Where more than one person was involved in a single transaction with Defendants triggering membership in the UCC Class (e.g., two co-buyers contracted to purchase a vehicle which was subsequently repossessed), a single payment will be made out to all persons involved in the transaction, as calculated below.  As such, there will be a total of 928 payments.  Payments shall be calculated as follows:  UCC Class members will receive pro rata amounts of the remaining funds based on the ratio of the finance charge plus 10% of the amount financed in the class member's transaction, to the total finance charge plus 10% of the amount financed in all of the transactions of UCC Class members.  The parties estimate that this will result in an average payment of $550 per transaction.

c.     **Gift Certificate Relief.**  Defendants shall provide the class administrator with $245,200 in the form of gift certificates within 30 days of the Effective Date.

i.  **Number and Amount of Gift Certificates**.  All class members shall receive one gift certificate in the amount of $200.  Members of both classes shall receive only one gift certificate.  Where more than one person was involved in a single transaction with Defendants triggering class membership (e.g., two co-buyers contracted to purchase a vehicle), a single gift certificate will be addressed to all persons involved in the transaction.  As such, there will be a total of 1,226 gift certificates issued.

ii.  **Terms of Gift Certificates**.  The gift certificates will be usable for vehicle purchases, service, or parts at Gurley Motor Co.  The gift certificates are non-transferable, are not subject to redemption for cash, and each must be used in full at one time, although not necessarily for one item.  All gift certificates will expire 3 years from their date of issuance, which shall be the date printed on the gift certificate.  The date printed on the gift certificate shall be the date of the sixtieth day after the Effective Date.

d.  **Distribution of Monetary and Gift Certificate Relief to the Class.**  Within 60 business days after the Effective Date, a settlement administrator selected by Plaintiffs' counsel will distribute the money in the form of a check ("First Mailing"), which will become void after 180 days from the date of issue, and gift certificates to such members of the class as can be located.  The return address on the envelope will be that of the Settlement Administrator.

i.     The checks shall be issued on a national bank that has branch offices in the Gallup area, including the Navajo reservation.  Defendants agree to cash any settlement checks presented at Gurley Motor Co.:

(1)     Without payment of any fee;

(2)     Without requiring the payee to present identification other than a valid/current state issued photo ID, or driver's license; and

(3)     Informing the payee that they are not required pay any existing debt, purchase any goods or services, or otherwise obligating or burdening the payee.

ii.     In the event that a class member who is entitled to a payment or gift certificate is deceased, the payment or gift certificate shall be issued to a person reasonably believed to be that person's heir or beneficiary, upon presentation of reasonable written documentation by such person to Plaintiffs.  Plaintiffs are solely responsible for this determination, and Defendants shall have no liability relating to such determination.

iii.     **Unclaimed Amounts.**

(1)     **Monetary Relief.**  The total cash amount of all checks written to class members who fail to cash their checks by the void date ("Cash Remainder") will be distributed in a second round of checks ("Second Mailing") to those class members who did cash their checks, if practicable and economical, as follows: first, the cost of the Second Mailing will be deducted from the Cash Remainder; second, if practicable and economical, the remaining

7

amount of the Cash Remainder will be distributed pro rata to members of both classes based on the ratio of the class member's check amount in the First Mailing to the total amount of cashed checks in the First Mailing.  If the Second Mailing is determined not to be practicable or economical, the Cash Remainder will be donated by the class administrator to Equal Access to Justice, a 501(c)(3) charitable organization which provides legal assistance to low and moderate income persons in New Mexico.  The parties agree that in no case shall the Cash Remainder be returned to Defendants, and that if the Court orders the Cash Remainder to be disposed of in some other manner, it shall not constitute a substantive change to this Agreement.

(2)     **Gift Certificates**.    Defendants shall have no further obligation to pay any amounts relating to gift certificates that are not redeemed by the expiration date, including gift certificates that cannot be distributed to class members because such class members cannot be found.

e.     **Non-Monetary Relief**

i.     **Debt Forgiveness**.  Defendants agree to waive any amounts allegedly owed to them by any UCC Class member in the transactions giving rise to UCC Class membership.  The total amount of such debt forgiveness is $3,820,578.  Defendants will

8

not issue any 1099(c) alleging that such waiver represents the forgiveness of debt to a class member.

ii.   **Credit Reporting**.  To the extent that Defendants have reported any derogatory information about class members to a credit reporting agency relating to the transactions giving rise to UCC Class membership, Defendants agree to take all reasonable steps to delete the trade line relating to such information.

4.   **Publicity**.  Plaintiffs and their counsel agree not to publicize this Settlement Agreement to the media, and if contacted by media, to limit their comments relating to this Settlement Agreement to a statement that they believe this settlement to be fair to Plaintiffs and the class.

5.   **Releases.**

a.   Plaintiffs and each class member, as of the Effective Date, release and discharge Defendants, their officers, directors, successors, predecessors, executors, administrators, assigns, shareholders, affiliated companies, attorneys and employees, from Defendants' alleged violations of the Truth in Lending Act and the Uniform Commercial Code, as described in the Complaint herein.

b.   This release is conditioned upon the performance by Defendants of its obligations toward Plaintiffs and the class members, as set forth in this Settlement Agreement.

6.   If this Settlement Agreement is not approved by the Court or for any reason does not become effective, it shall be deemed null and void and shall be without prejudice to the rights of the parties hereto and shall not be used as a limitation on Plaintiffs' alleged

damages, nor as an admission, or evidence, of liability, or class certification, by Defendants in any subsequent proceedings in this or any other litigation, or in any manner whatsoever.

7.    **Approval of Settlement.**  Defendants shall cooperate in and concur in all procedural requirements for approval of this Settlement Agreement, including but not limited to:

a.    Motion for Preliminary Approval;

b.    Motion for Final Approval;

c.    Motion for Attorneys' Fees and Costs; and

d.    Following the Effective Date, full performance of this Settlement Agreement, and the disposition of all unclaimed funds, Motion to Dismiss.

8.    **Court Required Changes to Settlement Agreement.**  In the event that the Court conditions its preliminary or final approval of this Settlement Agreement on any changes to the Agreement, the Parties shall in good faith consider such changes and consent to them if they do not substantively alter the obligation of the party.  Changes that shall be deemed to substantively change the obligation of a party include, but are not limited to, changes that affect (a) the monetary payments required hereunder; (b) the scope of the release to be granted; (c) the definition of the classes or class members; or (d) a provision expressly noted as material in this Settlement Agreement.  Changes that merely alter wording or that reasonably modify timing of any event do not substantively change the obligations hereunder.

9.    **Right of Exclusion.**  Any class member may seek to be excluded from this Agreement and from the class in the manner provided by the Court.  Any class member so excluded

shall not be bound by the terms of this Settlement Agreement nor entitled to any of its benefits.

10. **Other matters.**   The parties and their attorneys agree to cooperate fully with one another in seeking court approval of this Settlement Agreement, and to use their best efforts to effect the consummation of this Settlement Agreement and the settlement provided for herein as soon as is reasonably possible.

11. The foregoing constitutes the entire agreement between the parties with regard to the subject matter hereof and may not be modified or amended except in writing, signed by both parties hereto, and approved by the Court.

12. This Settlement Agreement may be executed in counterparts, in which case the various counterparts shall be said to constitute one instrument for all purposes.  The several signature pages may be collected and annexed to one or more documents to form a complete counterpart.  Photocopies of executed copies of this Settlement Agreement may be treated as originals.

13. Each and every term of this Settlement Agreement shall be binding upon Plaintiffs, the class members, their successors and personal representatives, and Defendants and their successors, assigns and affiliates.  All of these persons and entities are intended to be beneficiaries of this Settlement Agreement.

14. This Settlement Agreement shall be governed by and interpreted in accordance with the laws of the State of New Mexico.

IN WITNESS WHEREOF, the parties hereto, acting by and through their respective counsel of record, have so agreed.  This agreement may be executed in counterparts.

_____
Eugene Yazzie, Plaintiff


_____
Phyllis Yazzie, Plaintiff


Approved:

_____
Nicholas H. Mattison
Richard N. Feferman
Feferman & Warren, attorneys for Plaintiffs and the class
300 Central Ave., SW, Suite 2000 West
Albuquerque, NM 87102

_____
Gurley Motor Co.

By:_____

Its:_____


_____
Red Rock Investment Co.

By:_____

Its:_____


Approved:


_____
Mark D. Jarmie
Jarmie & Associates, Attorneys for Defendants
514 Marble Ave. NW
Albuquerque, NM 87102