IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

EUGENE YAZZIE and
PHYLLIS YAZZIE,
on behalf of themselves
and all others similarly situated,

   Plaintiffs,

v.                 No. 1:14-cv-00555-JAP-SCY

GURLEY MOTOR CO. and
RED ROCK INVESTMENT CO.,

   Defendants.

## UNOPPOSED MOTION
## FOR ATTORNEY'S FEES, EXPENSES, AND SERVICE AWARD

### I. Introduction

On June 30, 2016, the Court preliminarily approved a class action settlement agreement ("the Settlement Agreement") between Plaintiffs Eugene and Phyllis Yazzie, acting on behalf of the two classes certified in this case, and Defendants Gurley Motor Co. and Red Rock Investment Co. [Doc. 185] The Settlement Agreement provides substantial monetary and non-monetary relief to class members. This relief includes a settlement fund of $940,200, comprising $695,000 cash and $245,200 in the form of gift certificates. Under the plan of distribution proposed in the Settlement Agreement, members of the TILA Class will each receive a payment of $135. Members of the UCC Class will receive payments in varying amounts depending on each member's UCC damages, averaging more than $500 per class member. In addition, each class member will receive a gift certificate in the amount of $200. UCC Class members also will

1

receive debt relief worth $3,820,578. Finally, Defendants will delete any negative credit reporting relating to the transactions giving rise to UCC Class membership.

This outstanding result was achieved after years of complex litigation with no guarantee of payment for Mr. and Mrs. Yazzie's attorneys ("Class Counsel"). Plaintiffs respectfully move the Court to award payment to Class Counsel in the amount of $173,750, inclusive of all attorney's fees, litigation costs, costs of class administration, and applicable taxes. This is equal to 18% of the overall settlement fund, and 25% of the cash portion of the settlement fund.[1] As discussed below, this is a modest award under the standards recognized in the Tenth Circuit.

Plaintiffs also request that the Court approve a service award of $8,000 for the named Plaintiffs, Eugene and Phyllis Yazzie.[2] Mr. and Mrs. Yazzie contributed substantial time and effort to this class action, which was dramatically more difficult than an individual case would have been. Without their efforts, there would be no common fund for the class.

Plaintiffs submit this Motion well in advance of the final approval hearing pursuant to the Court's suggestion at the preliminary approval hearing on June 29, 2016. This procedure will allow class members to review Plaintiffs' request for attorney's fees, costs, and service award prior to the deadline to opt out or object on September 28, 2016. The Court need not rule on this Motion until after the final approval hearing on October 26, 2016. Defendants do not oppose this Motion.

---

[1] This percentage is calculated excluding the value of debt relief and credit repair, which would make the percentages considerably lower. Although these aspects of settlement have definite economic value to class members, their exact value is debatable. Because Plaintiffs' attorney's fee request is reasonable even excluding the entire value of these aspects of the settlement, Plaintiffs do not include them in their percentage calculation.

[2] Unfortunately, Mr. Yazzie recently passed away, as noted in a separately filed Suggestion of Death. Plaintiffs request that Mr. Yazzie's service award be presented to his surviving spouse, Phyllis Yazzie.

## II. Nature of the Case

In this action, Plaintiffs alleged that Defendant Gurley Motor Co.'s standard form contracts improperly disclosed a "deferred down payment" in violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq*. [Doc. 21] Plaintiffs alleged that Defendant Red Rock Finance Co. is liable for Gurley's TILA violations as the assignee of its contracts. Plaintiffs also alleged that when Red Rock repossessed vehicles, it used an improper notice, in violation of the New Mexico Uniform Commercial Code ("UCC"), N.M.S.A. 1978 § 55-1-101 *et seq*.

Plaintiffs engaged in extensive and detailed discovery. This included nine sets of written discovery and the disclosure of nearly 5,000 pages of documents by Defendants. Plaintiffs took the 30(b)(6) depositions of both Defendants, involving three separate corporate designees. The parties engaged in detailed and hotly contested motions practice concerning discovery.

Plaintiffs moved for class certification on August 21, 2015 [Doc. 68 and 69]. The motion was fully briefed, and on October 30, 2015 [Doc. 87], the Court certified the following two classes:

> 1. A "Loan Agreement Class" or "TILA Class" consisting of all natural persons who, beginning one year prior to the filing of the Complaint, entered into a Motor Vehicle Installment Loan Contract with Gurley to purchase a vehicle primarily for personal, family, or household use, where the loan agreement included a "deferred down payment," which was listed in the disclosed Payment Schedule but not included in the Total of Payment, and
>
> 2. A "Notification Class" or "UCC Class" consisting of all natural persons which purchased a vehicle from Gurley primarily for personal, family, or household use, whose financing contract was assigned to Red Rock and to whom, beginning four years prior to the filing of the Complaint, Red Rock sent its Notification Before Disposition of Collateral, after repossessing the person's vehicle.

On January 6, 2016, Plaintiffs moved for summary judgment [Docs. 126 and 148]. The matter was fully briefed, and on March 8, 2016, the Court granted in part and denied in part the motion [Doc. 153]. The Court ruled that Defendants were liable for the claims of the TILA and UCC Classes and ruled on the formula to be used in determining damages for violations of the UCC. The Court did not grant summary judgment on the amount of damages for TILA violations.

On April 15, 2016, Defendants filed a Due Process Motion Regarding Class Action Damages requesting that the Court limit the amount of damages available to the Classes. [Doc. 177] This Motion was pending at the time that the Settlement Agreement was reached.

Following extensive informal settlement discussions and one formal mediation, on April 29, 2016, the parties engaged in a second mediation of this case before United States Magistrate Judge Steven Yarbrough. Like previous negotiations, the second mediation was highly adversarial, non-collusive, and at arm's length. With Judge Yarbrough's assistance, the parties finally reached settlement [Doc. 179]. As described above, the Settlement Agreement provided substantial monetary and non-monetary benefits to class members. [Doc. 185]

### III. The Requested Fee is Reasonable

Plaintiffs request an award to their attorneys of $173,750, representing 18% of the settlement fund and 25% of the cash portion of the settlement fund. This award includes all attorney's fees, litigation costs, costs of class administration, and applicable taxes. This is a modest request by the standards of the Tenth Circuit.

"When there is a common fund created by a settlement, courts have applied one of two methods of determining reasonable attorney's fee awards: by a percentage of the fund, or by the

4

lodestar method developed in the statutory fee shifting cases." *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995). The Tenth Circuit has stated a "preference for the percentage of the fund method." *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994). This method involves "a sharing of the fees among those benefitted by the litigation," and "aligns the interests of class counsel with the interests of the class." *Ramah Navajo Chapter v. Jewell*, No. 90 CV 957 JAP/KBM, 2016 WL 825710, at *18-19 (D.N.M. Mar. 2, 2016) (internal quotation marks and citation omitted). To determine the reasonableness of a percentage of the fund request, "federal courts have relied heavily on the factors articulated by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974)." *Brown v. Phillips Petroleum Co*., 838 F.2d 451, 454 (10th Cir. 1988). The *Johnson* factors are:

> (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) any prearranged fee—this is helpful but not determinative; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Jewell*, 2016 WL 825710, at *18 (quoting *Johnson*, 488 F.2d at 717-19). Here, the *Johnson* factors weigh strongly in favor of the requested award.

**(1) The Time and Labor Involved and (11) the Nature and Length of the Professional Relationship**

Class Counsel put more than 250 hours of attorney time into this case. *See* Exhibit 2 (billing records of Feferman & Warren).[3] This time was expended in detailed and complex discovery and hard-fought motions practice. *See* Exhibit 1 (Declaration of Nicholas Mattison). Class Counsel was involved with this case since its inception, and demonstrated "devotion to the best interest of class members during the span of [this] professional relationship[]." *Millsap v. McDonnell Douglas Corp.*, No. 94-CV-633-H(M), 2003 WL 21277124, at *11 (N.D. Okla. May 28, 2003). The complete resolution of this hotly contested class action in just over two years represents expeditious and diligent work on the part of Class Counsel.

**(2) The Novelty and Difficulty of the Questions**

This case involved novel and difficult questions. As demonstrated in the briefing on class certification [Docs. 68, 69, 74, and 77] and summary judgment [Docs. 126, 148, 142, and 149], this case was complex from a factual and legal perspective. Defendant's liability turned on technical application of the UCC and the TILA. Ruling on Plaintiffs' Opposed Motion for

---

[3] "The Tenth Circuit has made it clear that district courts need not calculate a lodestar when applying the percentage method." *Jewell*, 2016 WL 825710, at *19. This fact notwithstanding, Class Counsel submit their billing records for the information of class members and to demonstrate the substantial time that was expended on this case. Attorney Nicholas Mattison, who handled most of the work in this case at his lower rate as an associate, normally bills $195 per hour. *See* Exhibit 1 (Declaration of Nicholas Mattison). Richard Feferman bills at $325 per hour. *Id*. Work performed by paralegals was billed at a rate of $95 per hour. At these rates, Class Counsel's lodestar is $55,836.84, including applicable taxes. *See* Exhibit 2 (billing records of Feferman & Warren). Class counsel anticipates that additional work in administering settlement, including moving for final approval, supervising distribution of the settlement fund, and requesting a *cy pres* award for unclaimed funds, will significantly increase their lodestar.

6

Summary Judgment, this Court observed with respect to damages under the UCC that "[n]o New Mexico Appellate Court has offered any guidance that would directly resolve this dispute." [Doc. 153 at 14] At the time that this case was settled, the parties were grappling with another novel challenge: the application of the federal Due Process Clause to the award of statutory damages in a UCC class action. [Doc. 177] From its outset, this case covered new ground.

### (3) The Skill Required and (9) the Experience, Reputation, and Ability of the Attorneys

Because this case presented novel and difficult questions, it required a high degree of skill to litigate. Plaintiffs were represented by New Mexico's preeminent consumer law firm. Feferman & Warren has practiced exclusively in consumer law in New Mexico for more than twenty years. *See* Exhibit 1 (Declaration of Nicholas Mattison). Last year, Mr. Feferman and his firm were appointed class counsel in another consumer class action, *Chester v. Tancorde Finance, Inc.*, 1:14-CV-92 JAP/KK (Doc. 33, January 12, 2015), where this Court stated, "Mr. Feferman has been a mainstay in successful consumer class actions in this District, and the Court is confident he will adequately represent the class and vigorously prosecute this case to its conclusion." Even more recently, approving a class action settlement agreement, the Court opined that "Mr. Feferman and Mr. Mattison are highly capable practitioners of consumer law in New Mexico." *Tullie v. T&R Market, Inc.*, 1:14-CV-670 KBM/GJF (Doc. 147, August 30, 2016). Plaintiff's counsel demonstrated a high degree of skill in litigating this case, including the submission of technically demanding motions for certification and summary judgment.

**(5) The Customary Fee and (12) Awards in Similar Cases**

Some Courts in the Tenth Circuit have indicated that there is a "25% benchmark" for percentage of the fund attorney's fee awards, with adjustments to be made based on the *Johnson* factors. *Ramah Navajo Chapter v. Norton*, 250 F. Supp. 2d 1303, 1316 (D.N.M. 2002). However, this "benchmark" is not universally cited, and awards above 25% are quite common. "[F]ees in the range of 30–40% of any amount recovered are common in complex and other cases taken on a contingent fee basis." *Lane v. Page*, 862 F. Supp. 2d 1182, 1256 (D.N.M. 2012); *see also*, *Chieftain Royalty Co. v. SM Energy Co.*, No. CIV-11-177-D, 2015 WL 9451069, at *4 (W.D. Okla. Dec. 23, 2015) ("fees in the range of one-third of the common fund are frequently awarded in class action cases as fair and reasonable."); *Anderson v. Merit Energy Co.*, No. CIV. 07-CV-00916 LTB/BNB, 2009 WL 3378526, at *3 (D. Colo. Oct. 20, 2009) ("The customary fee to class counsel in a common fund settlement is approximately one-third of the economic benefit bestowed on the class.").

In determining the size of the fund from which the percentage is calculated, the CAFA directs Courts to scrutinize "coupon settlements," 28 U.S.C. § 1712, but the gift certificate portion of the Settlement Agreement in this case is not a coupon settlement. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 950-51 (9th Cir. 2015) (explaining that "coupons" within the meaning of the statute involve small discounts requiring class members "to hand over more of their own money before they can take advantage of the coupon"). Thus, the "common fund" is the entire amount of cash plus gift certificates, or $940,200.

Whether or not the gift certificates are included in the calculation of the percentage of the fund, Plaintiff's' attorney's fee request is modest under the standards established in the Tenth

8

Circuit. As noted above, the requested award of $173,750 for attorney's fees represents 18% of the total settlement fund, 25% of the cash portion of the settlement fund. If costs are excluded from this calculation (at least $10,000 of the $173,750 is likely to be used to reimburse costs), the percentages are even lower: attorney's fees alone are likely to represent only 17% of the settlement fund and 24% of the cash portion of the settlement fund. These percentages are well within the normal range in the Tenth Circuit.

### (6) Any Prearranged Fee and (4) The Preclusion of Other Employment

Class counsel undertook this action on a contingency basis. *See* Exhibit 1 (Declaration of Nicholas Mattison). Class counsel would receive no compensation for their work if they did not prevail in this action. "Given the risk of non-recovery, this factor weighs heavily in favor of the requested fee." *Vaszlavik v. Storage Corp.*, No. 95-B-2525, 2000 WL 1268824, at *4 (D. Colo. Mar. 9, 2000). "Such a large investment of money and time places incredible burdens upon law practices and should be appropriately considered." *Lane,* 862 F. Supp. 2d at 1256 (D.N.M. 2012) (internal quotation marks, citation, brackets, and ellipsis omitted); *see also, Been v. O.K. Indus., Inc.,* No. CIV–02–285 RAW, 2011 WL 4478766, at *9 (E.D.Okla. Aug. 16, 2011) ("Courts agree that a larger fee is appropriate in contingent matters where payment depends on the attorney's success.").

In addition to taking the risk of non-payment, Plaintiff's counsel were precluded from engaging in other work during the time dedicated to this case. This type of action "necessarily require[s] a great deal of work, and a concomitant inability to take on other cases." *Lucas v. Kmart Corp.*, No. CIV.A. 99-01923, 2006 WL 2729260, at *6 (D. Colo. July 27, 2006).

9

### (10)   The Undesirability of the Case

This case was difficult and risky. "[A]t the class certification stage, no other class member or law firm sought to represent the class." *Lane,* 862 F. Supp. 2d at 1258 (D.N.M. 2012). No law firm other than Class Counsel showed any willingness to undertake this litigation. *See* Exhibit 1 (Declaration of Nicholas Mattison). No class member other than Mr. and Mrs. Yazzie was willing make the considerable investment of time and resources to represent the classes. "Attorneys must have incentive to take undesirable cases in order to assure access to the courts for all people; awarding fees based on a reasonable percentage of the recovered fund provides such an incentive." *Millsap,* 2003 WL 21277124, at *12.

### (8) The Amount Involved and Results Obtained

The Settlement Agreement involves the creation of a substantial settlement fund worth nearly one million dollars. This consists of $695,000 in cash, along with $245,200 in gift certificates that will be of value to every class member because automotive parts and services like oil changes are virtually universally valuable. This is a very substantial recovery for consumers, particularly considering that the defendant is a car dealership in Gallup, New Mexico. Moreover, on an individual basis, the Settlement Agreement means real money for class members. Members of the Notification Class will receive more than $500 each, and members of the Sales Class will receive more than $100 each.

Class Counsel respectfully submit that they have achieved an outstanding result for class members.

### IV. The Requested Service Award is Appropriate

Plaintiff requests that the Court approve a service award of $4,000 for each named Plaintiff, for a total of $8,000. "The practice of granting incentive awards to Class Representatives is common and widespread in class litigation." *Ponca Tribe of Indians of Oklahoma v. Cont'l Carbon Co.*, No. 05-445 (C), 2009 WL 2836508, at *2 (W.D. Okla. July 30, 2009) (approving awards ranging from $1,000 to $15,000 for class representatives). "[I]ncentive awards are an efficient and productive way to encourage members of a class to become class representatives, and to reward the efforts they make on behalf of the class." *Shaw v. Interthinx, Inc.*, No. 13-CV-01229-REB-NYW, 2015 WL 1867861, at *8 (D. Colo. Apr. 22, 2015) (internal quotation marks and citation omitted) (awarding $10,000 to each of five named plaintiffs); *see also*, *Jones v. I.Q. Data Int'l, Inc.*, No. 1:14-CV-00130-PJK, 2015 WL 5704016, at *2 (D.N.M. Sept. 23, 2015) (approving a service award of $20,000 out of a $1,000,000 settlement fund).

Mr. and Mrs. Yazzie have been closely involved in this case for more than two years. *See* Exhibit 1 (Declaration of Nicholas Mattison). They regularly met in person and communicated by telephone with their attorneys throughout that time. They reviewed key pleadings and helped to formulate and evaluate settlement offers. They twice made a round trip of almost 500 miles to attend a settlement conference in Albuquerque. Mr. and Mrs. Yazzie persevered through hardships to serve as class representatives. They live on the Navajo Nation on an extremely limited incomes. Their participation in this case was difficult and stressful for them.

As a class action, this case has been dramatically longer and more contentious than it would have been as an individual case involving only Mr. and Mrs. Yazzie's vehicle. At no

11

point has any other person indicated any interest or willingness to take Mr. and Mrs. Yazzie's place as class representative. Mr. and Mrs. Yazzie's labors have produced a substantial common fund that would have been impossible without them. A service award of $8,000 is reasonable amount to compensate Mr. and Mrs. Yazzie for their contributions to this case.

### V. Conclusion

Plaintiffs respectfully move the Court to award payment to Class Counsel in the amount of $173,750, inclusive of all attorney's fees, litigation costs, costs of class administration, and applicable taxes. Plaintiff's also request that the Court approve a service award of $8,000 for the named Plaintiffs.

Respectfully submitted,

*/s/ Nicholas H. Mattison*
Nicholas H. Mattison
Richard N. Feferman
Feferman & Warren, attorneys for Plaintiffs
300 Central Ave., SW, Suite 2000 West
Albuquerque, NM 87102
(505) 243-7773

Approved:

*/s/Mark D. Jarmie*
Mark D Jarmie,
Jarmie and Associates, attorneys for Defendants
PO Box 26416
Albuquerque, NM 87125-6416
(505)243-6727

**CERTIFICATE OF SERVICE**

I hereby certify that on September 8, 2016 I filed the foregoing pleading electronically through the Courts's CM/ECF File System, which caused all parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Mark Jarmie    mjarmie@jarmielaw.com

*/s/ Nicholas Mattison*