IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

EUGENE YAZZIE and
PHYLLIS YAZZIE,
on behalf of themselves
and all others similarly situated,

        Plaintiffs,

v.                                                                      No. 1:14-cv-00555-JAP-SCY

GURLEY MOTOR CO. and
RED ROCK INVESTMENT CO.,

        Defendants.

## PLAINTIFFS' UNOPPOSED MOTION
## FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT

### I.    Introduction

Plaintiff Phyllis Yazzie[1], through counsel, respectfully requests that the Court grant final approval to the Settlement Agreement between the parties [Doc. 187]. The Settlement Agreement provides substantial benefits to the class, including a settlement fund of nearly a million dollars in cash and gift certificates, millions of dollars in debt relief, and valuable credit repair.

Plaintiff also requests that the Court approve an award to Class Counsel of $173,750 inclusive of attorney's fees, litigation costs, costs of class administration, and applicable taxes, and approve a service award of $8,000 to the named Plaintiffs.

Class members have been notified of the Settlement Agreement, and not a single one has objected. No class member has opted out of settlement.

Defendants concur in this Motion for Final Approval. The parties agree that the Settlement Agreement is fair, reasonable, adequate, and worthy of approval.

---

[1] Plaintiff Eugene Yazzie has passed away. [Doc. 192]

## II.     Background

The background of the claims in this case is stated in detail in the briefing and order concerning Plaintiffs' Motion for Class Certification [Docs. 69, 74, 77, and 87], and Plaintiffs' Motion for Summary Judgment [Docs. 142, 148, 149, and 153].

In summary, in their Amended Complaint [Doc. 21], Plaintiffs alleged that Defendant Gurley Motor Co.'s standard form contracts improperly disclosed a "deferred down payment" in violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq*. Plaintiffs alleged that Defendant Red Rock Finance Co. is liable for Gurley's TILA violations as the assignee of its contracts. Plaintiffs also alleged that when Red Rock repossessed vehicles, it used an improper notice, in violation of the New Mexico Uniform Commercial Code ("UCC"), N.M.S.A. 1978 § 55-1-101 *et seq*.

Plaintiffs moved for class certification on August 21, 2015 [Doc. 68 and 69]. The motion was fully briefed, and on October 30, 2015 [Doc. 87], the Court certified the following two classes:

1.     A "Loan Agreement Class" or "TILA Class" consisting of all natural persons who, beginning one year prior to the filing of the Complaint, entered into a Motor Vehicle Installment Loan Contract with Gurley to purchase a vehicle primarily for personal, family, or household use, where the loan agreement included a "deferred down payment," which was listed in the disclosed Payment Schedule but not included in the Total of Payment, and

2.     A "Notification Class" or "UCC Class" consisting of all natural persons which purchased a vehicle from Gurley primarily for personal, family, or household use, whose financing contract was assigned to Red Rock and to whom, beginning four years prior to the

filing of the Complaint, Red Rock sent its Notification Before Disposition of Collateral, after repossessing the person's vehicle.

On January 6, 2016, Plaintiffs moved for summary judgment [Docs. 126 and 148]. The matter was fully briefed, and on March 8, 2016, the Court granted in part and denied in part the motion [Doc. 153]. The Court ruled that Defendants were liable for the claims of the TILA and UCC classes and ruled on the formula to be used in determining damages for violations of the UCC. The Court did not grant summary judgment on the measure of damages for TILA violations.

Following extensive formal and informal settlement discussions, on April 29, 2016, the parties engaged in a second mediation of this case before United States Magistrate Judge Steven Yarbrough, and reached settlement [Doc. 179].

The parties executed a written Settlement Agreement [Doc. 187] and moved for preliminary approval [Doc. 180]. After a hearing, the Court granted preliminary approval to the Settlement Agreement and scheduled a final hearing for October 19, 2016. [Doc. 185] The Court directed that notice of settlement be sent to class members. [Doc. 186] The Court later rescheduled the final hearing to October 26, 2016. [Doc. 191] Plaintiffs provided notice of the Settlement Agreement and the scheduling change to class members, as directed. *See* Section IV, *infra*.

## III.    The Settlement Agreement Is Fair, Reasonable, and Adequate

For all of the reasons set forth in Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement Agreement [Doc. 180], the Settlement Agreement should be given final approval. The Settlement Agreement provides very substantial relief to class members. This includes payments from a settlement fund of $940,200, comprising $695,000 cash and $245,200 in the

form of gift certificates.  Class members will also receive debt relief for worth $3,820,578.  Finally, class members will receive the deletion of adverse credit reporting, which is a major benefit to class members who may need to obtain credit in the future.

## IV.     Class Members Have Been Properly Notified

On June 30, 2016, the Court ordered Plaintiffs to send the Notice within 30 days (by July 30, 2016). [Doc. 186]  Working with Adelante Development Center, Inc. ("Adelante"), Plaintiffs mailed the Notice to class members within the deadline established by the Court.  *See* Exhibit 1 (Declaration of Adelante Development Center, Inc.).  Using spreadsheets provided by Defendants, Adelante created three mailing lists: one for the TILA class, one for the UCC class, and one for individuals in both classes.  *Id*.  Before the mailing, Adelante updated class members' addresses using the National Change of Address database.  *Id*.  On July 29, 2016, Adelante mailed 1,246 notices via first class mail to class members.  *Id*.  Of these letters, 154 were returned to Plaintiffs.  Plaintiffs engaged American Legal Claim Services, LLC ("ALCS"), to "skip trace" these individuals.  Skip tracing is the process of using sophisticated databases to attempt to locate individuals.  ALCS was able to find updated addresses for 107 of the 154 class members whose notices were returned.  *See* Exhibit 2 (Affidavit of American Legal Claim Services, LLC).  ALCS re-mailed the notice to all of these individuals.  *Id*.  Of these re-mailed notices, 19 have been returned.  As a result, as of the filing of this Motion, 1,180 of the 1,246 class members are presumed to have received notice and will take part in settlement.  *Id*.

In addition to skip tracing and re-mailing the notice, ALCS also sent an additional notice to class members regarding the rescheduling of the final hearing.  *Id*.

## V. No Class Member Has Objected to the Settlement Agreement

As of the filing of this Motion, no class member has objected to the proposed Settlement Agreement. No class member has opted out of this class action. Plaintiffs have been contacted by several class members seeking to note their change of address or to claim settlement proceeds on behalf of a deceased relative, and will process these requests in accordance with the Settlement Agreement.

## VI. The Parties Complied with the Class Action Fairness Act

On August 2, 2016, Defendants submitted notice of the Settlement Agreement to the appropriate federal and state Attorneys General in compliance with the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA"). [Doc. 188] No response has been received, and because 90 days will have elapsed since the mailing of the notice, pursuant to the CAFA, the Court may enter final judgment following the hearing on October 26, 2016.

## VII. The Requested Attorney's Fees, Costs, and Service Award Are Reasonable

For all of the reasons set forth in Plaintiffs' Unopposed Motion for Attorney's Fees, Expenses, and Service Award [Doc. 193], Plaintiff respectfully requests that the Court approve payment to Class Counsel in the amount of $173,750, inclusive of all attorney's fees, litigation costs, costs of class administration, and applicable taxes. Plaintiffs also request that the Court approve the service award of $8,000 for the named Plaintiffs. These amounts are modest under the standards recognized in the Tenth Circuit.[2] No class members have objected to the proposed award of Attorney's Fees, Expenses, and Service Award.

---

[2] In the Unopposed Motion for Attorney's Fees, Expenses, and Service Award, Plaintiffs explained how $173,750 was reasonable under the "percentage of the fund" approach preferred in the Tenth Circuit. Although the actual amount of attorney's fees and costs is irrelevant to this approach, Plaintiffs disclosed current attorney's fees of $55,836.84 and estimated costs of $10,000. Currently, Class Counsel's lodestar stands at $57,322.58, and costs are likely to run to more than $20,000. Although this information is not necessary for the Court's determination, it further underscores the reasonableness of the requested award.

## VIII.   Conclusion

Wherefore, Plaintiff Phyllis Yazzie respectfully requests that the Court grant final approval to the Settlement Agreement; direct the parties to implement the Settlement Agreement; approve an award of $173,750 to Class Counsel inclusive of attorney's fees, litigation costs, costs of class administration, and applicable taxes; approve a service award of $8,000 to the named Plaintiffs; and retain jurisdiction over the interpretation, enforcement, and implementation of the Settlement Agreement, including supervision of any *cy pres* award of any unclaimed funds.

Respectfully Submitted,

*/s/Nicholas Mattison*
Nicholas Mattison
Richard N. Feferman
Feferman & Warren, Attorneys for Plaintiff
300 Central Ave., SW, Suite 2000 West
Albuquerque, NM 87102
(505) 243-7773

Approved:

*/s/Mark D. Jarmie*
Mark D. Jarmie
Jarmie and Associates, Attorney for Defendants
PO Box 26416
Albuquerque, NM 87125-6416
(505)243-6727

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2016, I filed the foregoing pleading electronically through the Courts's CM/ECF File System, which caused all parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Mark D Jarmie: mjarmie@jarmielaw.com

*/s/ Nicholas Mattison*